327 So.2d 187 (1976)
Florence Manasco EASON et ux.
v.
HARTFORD ACCIDENT & INDEMNITY CO. et al.
No. 12812.
Court of Appeal of Louisiana, Second Circuit.
February 9, 1976.
*188 Gahagan & Gahagan by Henry C. Gahagan, Jr., Natchitoches, Wilkinson, Carmody & Peatross by Samuel W. Caverlee, Shreveport, for plaintiffs-appellants.
Blanchard, Walker, O'Quin & Roberts by Jerald L. Perlman, Shreveport, for defendant-appellee Houston Fire & Cas. Ins. Co.
Mayer, Smith & Roberts by Paul R. Mayer, Shreveport, for defendants-appellees Chevis H. Webb and Hartford Acc. & Indem. Co.
Before BOLIN, MARVIN and SMITH, JJ.
MARVIN, Judge.
Plaintiffs Eason, husband and wife, sued for personal injury to Mrs. Eason, related expenses and property damage arising out of a two-vehicle accident while Mrs. Eason was a guest passenger in her husband's pickup. Suit was filed against the owner of the other vehicle involved (Mr. Webb) which was being driven by the owner's wife, and against the liability insurer of each vehicle. Judgment below rejected the demands of each plaintiff and only the plaintiff wife appeals.
The accident occurred about 3:30 p.m. on a weekday in Bossier City on Barksdale Blvd. This is a four-lane thoroughfare at and near the accident scene with two lanes for southbound traffic. Before and at the time of the accident it was raining. Water had accumulated, but to no substantial depth, on the westernmost edge of the outside southbound lane. Both vehicles were southbound at a rate of speed less than the 35 mph speed limit. The Eason pickup was in the southbound outside lane while the Webb vehicle, a four-door conventional type station wagon was in the southbound inside lane. Mrs. Webb was accompanied by her two sons. Mark Webb, age 10, was in the right front seat. Kirk Webb, age 11½, was on the seat immediately behind the front seat.
In her allegations, Mrs. Eason contended that Mrs. Webb was attempting to pass when she negligently and carelessly drove her station wagon into the Eason pickup, alleging that the doctrine of res ipsa loquitur "should apply" to place the burden of proving "freedom from negligence" on defendant. In the alternative, Mrs. Eason alleged specific acts of negligence against Mrs. Webb. Thereafter and in the alternative, Mrs. Eason alleged ". . . and only if [the] court should hold . . . [Mr. Eason] . . . negligent in any manner, which negligence is specifically denied. . ." that the Eason liability insurer should be held for damages. Specific acts of negligence were then alleged against Mr. Eason by supplemental petition of Mrs. Eason.
*189 Mrs. Eason testified that she saw the station wagon for the first time when the glanced through the rear window of the truck to observe dark rain clouds behind the truck. At that time "she [the station wagon] was in her [the inside southbound] lane," according to Mrs. Eason. She then said she was looking out of the driver's side window of the pickup to see the station wagon ". . . coming over closer on us. . . and the car [station wagon] looked like it was going to try to pass us and then. . . the front of her [Mrs. Webb's] car hung our [front] bumper."
Mr. Eason testified, ". . . all I know, she just come up beside me and my bumper hung her" while he was in his lane. He says he did not see the station wagon ". . . not until it hit." He estimated the speed at "probably" 15 mph. The two vehicles separated before they stopped in the southbound lanes, eventually to be driven off the roadway to a parking area in front of adjacent commercial establishments before the police arrived to investigate.
Mrs. Webb testified that they were in "heavy traffic" and that there were vehicles ahead of and behind her in each southbound lane. She said she first heard "this crashing sound . . . it was a tearing sound, metal, that's what it was" and that she asked ". . . the boys to look and see what was causing that . . ." at a time when she was entirely within the left or inside lane. Mrs. Webb testified: "I became aware of . . . Mr. Eason's truck after I heard the scraping sound and I looked over and he was on the side. . ."
As shown by photographs and other evidence, the front bumper of the truck was bent forward at its configuration with the immediate left corner of the truck. There was slight damage to the left headlight rim of the truck. There was no damage to the right front of the station wagon or to its right front side or quarter panel. There was damage at the front seam of the right front door where it meets the quarter panel, and extending from this point down the two right doors of the station wagon to the rearwardmost seam of the right rear door. This damage is on the approximate level of the front bumper of the truck. The molding strip on the side of the station wagon at approximately the level of the headlight rim of the truck was pushed and bent approximately three feet towards the rear of the station wagon. Only that part of the molding strip on the rear door was damaged. There was no apparent damage to this molding strip on the right rear quarter panel, the front door or the right front quarter panel.
There was no debris or other evidence to indicate to the investigating officer where on the highway the impact or side swipe occurred. Mr. Webb, who arrived after the accident, testified that he inspected the damage to the vehicle and observed blue paint (the color of the station wagon) on the left front of the truck bumper. He said he pointed this out to the investigating policeman. The policeman made no written memoranda and did not remember this. Mrs. Eason remained in the truck after the accident. Mr. Eason stated that he did not know anything about blue paint on the left front of the truck bumper. Mrs. Webb did not look at the front of the bumper.
The Webb boys generally corroborated their mother's version as to the "scraping sound" and where the truck was, at or shortly after the time the sound occurred. Mark Webb additionally testified that before and at the time the scraping sound occurred he was looking downward through the right front window and vent window of the station wagon at the dashed line separating the two southbound lanes. He said he had been watching in this fashion for some distance as the station wagon moved along, attempting to get the effect or illusion that the dashed lines were or appeared to be a Solid line. He said at no time did the station wagon cross the dashed line. No other witness testified as to the relation *190 of the lane line to the vehicles, although each driver insisted that his or her vehicle was in its proper lane.
The trial court did not place the burden on the drivers to show freedom from fault as Mrs. Eason's pleadings primarily contended, and held in a very brief opinion that ". . . the burden is upon him who alleges the fault of another to prove it by a reasonable preponderance of the evidence." The court found "as a fact" that Mrs. Eason ". . . failed absolutely to offer any evidence as to the liability of the alternative defendant [the liability insurer of the truck] and has failed . . . [the] burden of proving that this accident was caused by the fault [of Mrs.] . . . Webb."

MRS. EASON'S CONTENTION ON APPEAL
In Mrs. Eason's appellate brief, confirmed in oral argument, these statements are made:
"A review of the record shows that the Webb version (Eason moved into the Webb lane of travel) is supported by the preponderance of the evidence. The only specific fact indicating one vehicle crossed the lane of travel was the testimony of Mark Webb, that the collision occurred while his mother's station wagon was in its proper lane. * * *
"* * * We read the record as preponderating that Eulas Eason crossed the center lane (of the two southbound lanes) . . . we analyze here that neither appellant nor her husband testified about seeing the dividing line and relating the vehicle to it. Only young Webb offered such testimony and it is supported by the standing water explanation for Mr. Eason moving to his left providing evidence for finding Mr. Eason negligent."
She contends here that the lower court was in error in not attempting to reconcile the conflicting testimony and assess fault on her alternative allegations of negligence against her husband. Among the cases she cites as supporting her contentions are Nelson v. Zurich Ins. Co., 247 La. 438, 172 So.2d 70 (1965) and Brown v. Southern Farm Bureau Casualty Ins. Co., 248 La. 943, 183 So.2d 313 (1966).
In the recent case of Michel v. State Farm, 314 So.2d 535 (La.App.1st Cir. 1975) our brothers of the 1st Circuit, through Yelverton, J., expounded with great clarity as to the existence and application in Louisiana of the principle asserted by the appellant. The rule is stated there in these words:
When an innocent party is injured through the concurrent acts of two parties under circumstances where one or the other must be at fault, the burden is upon these parties to exculpate themselves from negligence. 314 So.2d 538.
In Michel, the rule was said to be one of evidence, not of substantive law, and that it does not exempt a plaintiff from the ultimate responsibility of proving his or her case. We held as much in McDonald v. Osborne, 279 So.2d 263 (La.App.2d Cir. 1973). In Wheeler v. Simonton, 215 So.2d 359, 360 (La.App.2d Cir. 1968) we recognized the principle of Nelson v. Zurich Ins. Co., supra, that courts must determine fault to protect the rights of innocent guest passengers in two-car collision cases.
In Michel, the lower court held that neither driver had exculpated himself from negligence and rendered judgment for the guest passenger against the drivers of both vehicles. The 1st Circuit said this was error because the lower court did not perform its duty to make a determination of fact with regard to the specific negligence, vel non, of each defendant.
"Just as the adjudicative function is not fulfilled when the trier of fact calls the case a draw and lets neither party win, under circumstances where it is obvious that somebody has to be at fault, neither is the adjudicative function fulfilled *191 when the trier of fact applies the presumption involved in this case for the benefit of the plaintiff but fails to complete the fact finding process and make specific findings of negligence for the benefit of the two defendants. One defendant could be innocent. We conclude that the trial court's duty to reconcile requires it to make specific findings of fact with regard to each defendant in the case, as to that defendant's negligence. . ." Michel, 314 So.2d 541.
We adopt the reasoning of Michel. The plaintiff guest passenger bears the burden of first proving his innocence as to involvement and secondly proving that the circumstances of the accident compel a finding that either one or both drivers in a two-car collision must be at fault. Once the plaintiff guest passenger fulfills this burden, each defendant driver then must attempt to exculpate himself, not by mere denials of negligence but by asserting facts and circumstances of affirmative force.
". . . As the trial develops in such a case, the only practical method by which a defendant may exculpate himself is to prove the negligence of the other defendant. At the conclusion of trial, if the doctrine has been applied in the proper case, the trier of fact is faced with one of two decisions: whether to find both defendants negligent or only one defendant negligent. In no case can a trial court find that both defendants exculpated themselves, because it is basic to an application of the rule that one or the other of the parties must have been at fault. If both parties were innocent, then the rule was not applicable in the first place.
"The assistance which the rule was intended to give to an innocent plaintiff in a proper case was never intended as a means whereby the plaintiff might circumvent the ordinary requirements of burden of proof and bring down two defendants with one shot; it was meant only to assure that the plaintiff would get the benefit of the rule for the purpose of showing at least one defendant was responsible. It was never intended, as between the two defendants in a case, to make it more difficult than in any ordinary lawsuit for a defendant to avoid a finding of his own negligence. The application of the rule lies only where common sense based on the apparent facts suggest no other alternative than that somebody was negligent as between the two defendants. In short, where common sense and ordinary reason compel a finding on the basis of the ostensible facts that one or more of the multiple defendants in a case have to be guilty of negligence, the doctrine is available to the plaintiff. It then becomes the duty of the defendants to prove as among themselves which one was at fault, or stated another way, each must exculpate himself from fault." Michel, 314 So.2d 538-9.
In the instant appeal, the circumstances of two vehicles, which are proceeding in the same direction in adjoining lanes, colliding with each other, mandate that one or both drivers must be at fault. Plaintiff has proved her innocence from fault, being a guest passenger in one vehicle without any degree of control over either driver.
The lower court here was under a duty to reconcile the testimony and physical evidence and make specific findings of fact with regard to each defendant in the case, as to that defendant's negligence.
In Michel, the case was remanded with instructions that the lower court perform its duty and make specific findings of fact as to each defendant. As this is the first instance where we have expressly attempted to state the rule, we shall not remand in the interest of time, but shall exercise our discretion to perform the duty which rests primarily with the lower court.
*192 From the circumstances presented here, including the physical damage to each vehicle, the affirmative testimony of Mr. Webb that there was blue paint of the color of the station wagon on the front of the truck bumper, the weather conditions, the testimony of all drivers and passengers, we believe the evidence preponderates that the front bumper of the truck crossed the lane line, struck the front door of the station wagon and scraped across the front door to its front seam where the back edge of the bumper temporarily caught when the truck slowed in reaction to this collision. The slowing of the truck and constant speed of the station wagon, with the truck bumper caught in the seam pushed forward the truck bumper. When the bumper was disentangled the headlight rim of the truck, as the station wagon was proceeding forward, caught and damaged the rear door and its molding. Mrs. Webb was not at fault in causing the collision. Mr. Eason was at fault and the alternative plea of plaintiff should have been upheld.
Plaintiff Mrs. Eason cannot recover the medical expenses charged to the community, which according to statements entered into evidence exceed $200. There is no medical payment coverage under the Eason liability insurance policy.
Mrs. Eason, nevertheless, is entitled to damages for her injuries.
Mrs. Eason's treating orthopedic surgeon saw her three times over a three month period following the accident relative to her complaints of injury. He characterized her injuries as a mild strain of the cervical and thoracic area. He saw her at one time more than a year after the accident for complaints which he said were unrelated to the strain and he considered there were no permanent injuries to Mrs. Eason.
We consider an award of $900 to be adequate for the injuries sustained by Mrs. Eason. See Greene v. Allstate Ins. Co., 228 So.2d 151 (La.App.2d Cir. 1969) and Foret v. United Services Automobile Association, 293 So.2d 671 (La.App.1st Cir. 1974).
For reasons assigned the judgment below is reversed and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Mrs. Florence M. Eason for $900 against defendant Houston Fire and Casualty Insurance Company, with legal interest thereon from judicial demand and for all costs of these proceedings including the cost of appeal.
It is further ordered, adjudged and decreed that the demands of plaintiffs as against all other defendants are hereby dismissed.
Reversed and rendered.