854 So.2d 923 (2003)
Lorraine RICHARDSON, Plaintiff-Appellant,
v.
James L. ALDRIDGE, et al., Defendants-Appellees.
Kenneth Pollard, Plaintiff-Appellant,
v.
Carsheneka Richardson, et al., Defendants-Appellees.
Nos. 37,192-CA, 37,193-CA.
Court of Appeal of Louisiana, Second Circuit.
May 16, 2003.
Opinion Granting Rehearing October 3, 2003.
*927 Morris Bart, PLC, by Terry B. Loup, New Orleans, for Appellant, Lorraine Richardson.
Walker, Tooke & Lyons, by Laurie W. Lyons, Shreveport, for Appellant, Kenneth Pollard.
Lunn, Irion, Salley, Carlisle & Gardner, by Jack E. Carlisle, Jr., Shreveport, for Appellees, James Aldridge and Indiana Farmers Mutual Insurance Company.
Tracy L. Oakley, Ruston, for Appellees, Carsheneka Richardson and Safeway Insurance Company.
Hicks, Hubley & Marcotte, by Craig O. Marcotte, Shreveport, for Appellee, United Farm Family Mutual Insurance Company.
Before STEWART, GASKINS and KOSTELKA (Pro Tempore), JJ.
GASKINS, J.
The appeals in these two consolidated cases arise from a two-car auto accident. Passengers from the vehicles appeal from a jury decision that found neither driver at fault. We affirm.

FACTS
On March 7, 1998, Carsheneka Richardson was driving a 1988 Chevrolet Beretta west on I-20 in Webster Parish, Louisiana. Lorraine Richardson, age 20, was in the front passenger seat of her sister's car, which Carsheneka had bought only four days before. The sisters were accompanied by their teenage brother, Carlos McDaniel, who was seated in the back seat. They were going from Springhill to Shreveport to look for a house. At the same time, James Aldridge, a retired fireman from Indiana, was also proceeding west on I-20 in a 35-foot 1997 Chevrolet motor home. Kenneth Pollard, age 55, was a passenger in the Aldridge vehicle. Aldridge and Pollard were traveling to Texas on a fishing trip; they were pulling a 17-foot boat on a trailer behind the motor home. There was heavy rain, and visibility was poor. At about 1:30 p.m., a collision between the two vehicles occurred. Both vehicles left the roadway and struck trees.
On September 10, 1998, Lorraine Richardson filed suit against Aldridge and his insurer, Indiana Farmers Mutual Insurance Company, as well as against Carsheneka Richardson and her insurer, Safeway Insurance Company of Louisiana. On March 4, 1999, Pollard filed suit against Carsheneka Richardson and Aldridge and their respective insurers, as well as his own UM carrier, United Farm Family Mutual Insurance Company. On December 23, 2000, the trial court granted the motion of Aldridge and his insurer to consolidate the two suits for trial.
*928 A jury trial was held April 29 to May 2, 2002. The Richardson family members testified that they were traveling in the left lane when they were suddenly bumped in the right rear side by the Aldridge motor home. This caused them to hit the left side guard rail, cross back across the roadway into the motor home, and then leave the highway and hit a tree. Aldridge testified that he did not bump the Richardson car. Instead he saw the Beretta hydroplane, lose control, hit the guard rail and then come back across the interstate and collide with his motor home. Pollard testified that he was looking down at a map and that the Beretta was already out of control when he first saw it. He did not see what caused the Beretta to slide into the railing.
The jury found no negligence by either driver. Because the jury verdict form did not instruct them to stop after determining that the defendant drivers were not at fault, the jury continued on with its deliberations. It concluded that Lorraine Richardson was injured and set past medical expenses at $32,124.65 and past and future pain and suffering at $40,000. The jury also concluded that Pollard was injured and set past medical expenses at $30,978.90 and past and future pain and suffering at $20,000. A judgment rejecting the demands of the plaintiffs was signed on June 24, 2002.
On July 2, 2002, Lorraine Richardson filed a motion for JNOV and alternatively for new trial. Pollard filed a similar motion on July 3, 2002. The trial court issued a written opinion denying the motions on September 6, 2002. The trial court noted that it strongly disagreed with the verdict and would have found both drivers at fault with the "much larger percentage of fault" being assessed against Carsheneka Richardson. However, given the evidence presented at trial, the court concluded that it was unable to find that the jury's verdict was "not supportable by any fair interpretation of the evidence."
Both Lorraine Richardson and Pollard appealed.

NEGLIGENCE
Both appellants make essentially the same argument. They contend that the jury failed to properly apply the "guest passenger presumption of negligence." The rule was set forth in O'Donnell v. Adriatic Insurance Company, 34,994 (La. App.2d Cir.7/11/01), 792 So.2d 858, as follows:
When an innocent party is injured through the concurrent acts of two parties under circumstances where one or the other must be at fault, the burden is upon these parties to exculpate themselves from negligence.
See also Michel v. State Farm Mutual Automobile Insurance Company, 314 So.2d 535 (La.App. 1st Cir.1975); and Eason v. Hartford Accident & Indemnity Co., 327 So.2d 187 (La.App. 2d Cir.1976).
In Eason, supra, we adopted the reasoning of Michel, supra, and recognized the rule. We also agreed with the Michel court that it is an evidentiary rule, not a rule of substantive law; and, therefore, it does not exempt a plaintiff from the ultimate responsibility of proving his or her case. Under the reasoning of Michel and Eason, the guest passenger must first prove his or her innocence as to involvement in the accident and, second, must prove that the circumstances of the accident compel a finding that either one or both drivers in a two-car collision must be at fault. Once this burden is satisfied, each defendant driver must then attempt to exculpate him or herself, not by general denials of allegations, but by "asserting facts and circumstances of affirmative force." Eason, 327 So.2d at 191. This *929 rule was developed to assist a plaintiff in a proper case, not to allow the plaintiff to circumvent the ordinary requirements of burden of proof and "bring down two defendants with one shot; it was meant only to assure that the plaintiff would get the benefit of the rule for the purpose of showing at least one defendant was responsible." Michel, 314 So.2d at 539; Eason, 327 So.2d at 191.
A trial court's findings of fact will not be disturbed on appeal unless the reviewing court finds that they are clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). Under the manifest error standard, the linchpin is whether the trial court's findings are reasonable; even if the appellate court feels its own evaluation of the evidence is more reasonable, the trial court's findings cannot be reversed if they are in fact reasonable. Linnear v. Mutual Service Casualty Insurance Company, 35,152 (La.App.2d Cir.10/31/01), 799 So.2d 634. In other words, the appellate court may not reverse simply because it is convinced that had it been sitting as the trier of fact it would have ruled differently. Linnear, supra.
Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra.
After a careful review of the evidence we find that the guest passenger presumption of negligence is inapplicable here because it has not been shown that one or both of the drivers must necessarily be at fault. See Jolivette v. Highland Insurance Co., 488 So.2d 235 (La.App. 3d Cir. 1986), writ denied, 489 So.2d 923 (La. 1986).

Aldridge's alleged negligence
Carsheneka Richardson and her brother testified at trial that they were driving in the left westbound lane. According to their testimony, the Aldridge motor home bumped the right taillight of their car, causing it to hit the left-hand guardrail and then veer back across the highway into the motor home. However, when questioned by a state trooper at the hospital immediately after the accident, Carsheneka made no mention of the motor home hitting her first. Instead she told Trooper Michael Allen that she was going west when her car began spinning, and that she hit the bridge rail and lost control. At trial, she insisted that she told the trooper she was bumped but he cut her off and "didn't want to hear that." She also asserted that the trooper told her that she hit a water puddle. In his trial testimony, the trooper stated that she never mentioned being bumped by the motor home and he denied cutting her off.
Lorraine Richardson also testified that their car was bumped by the motor home. However, Aldridge, a retired fireman with experience driving fire trucks, testified that there was no possibility that he clipped the Beretta and caused it to lose control. More importantly, PollardAldridge's passenger and another plaintiff also seeking damagesdid not testify that the motor home bumped the car. As a passenger in the motor home, it is reasonable to assume that he would have felt the bump if that had, in fact, occurred and he would have testified accordingly. The only physical evidence of contact between the vehicles was gouge marks found in the right lane; the testimony indicates that this was where the Beretta and the motor home collided after the Beretta struck the railing.
It is obvious that the jury rejected the testimony of the siblings that their car was *930 struck first by the motor home; had it accepted the testimony, the jury would not have absolved Aldridge of liability. Under the circumstances, we cannot say that such a finding was unreasonable.
The plaintiffs also argue that, under Aldridge's version of the accident, he was far enough back from the Beretta to observe the out-of-control car and avoid the accident. Trooper Allen testified that Aldridge told him he saw the car hydroplane about a quarter of a mile ahead of him. In his trial deposition[1], Aldridge admitted that he might have made that statement to the trooper and stated that he was not good at estimating distances. Aldridge testified that, like him, the Beretta was traveling in the right westbound lane of traffic. When it hit some water, the Beretta "kind of raised up," turned, and veered off to the left. At the time the car went out of control, it was 10 to 12 car lengths or 150 to 200 feet ahead of him. He applied his brakes to slow down. Although he thought hitting the water caused the car to spin out, he looked back to see if anything else might have caused it. Then he saw the Beretta coming off the railing and back across the road toward him. In an effort to avoid the car, he pulled to the right and was partially in the emergency lane when the Beretta and his motor home collided. Aldridge testified that he did not think he could have avoided the accident.
Aldridge estimated that he was going between 45 to 55 mph. (The speed limit on I-20 is 70 mph.) His passenger, Pollard, testified at trial that Aldridge was going between 55 and 60 mph; after being confronted with his deposition testimony that Aldridge was going only 50 to 55 mph, he changed his estimate to 50 to 60 mph. Pollard also testified that when he saw the Beretta heading toward the railing, it was four to six car lengths or 100 feet ahead of them.
Under Louisiana's sudden emergency doctrine, a person "who finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or the best means to adopt to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to be the better method, unless the emergency is brought about by his own negligence...." Linnear, supra; Clark v. Natt, 32,548 (La.App.2d Cir.12/8/99), 748 So.2d 584, writ denied, XXXX-XXXX (La.3/17/00), 756 So.2d 1142.
Given the condition of the rain-slick highway and the suddenness of the incident, the jury obviously concluded that Aldridge was not negligent in failing to take successful evasive action to avoid the collision. Under the facts as presented at trial, we cannot say that this conclusion was unreasonable. This is particularly true since the plaintiffs failed to put on evidence demonstrating the distance within which Aldridge should have been able to stop his motor home under the circumstances of this case.

Carsheneka's alleged negligence
Carsheneka Richardson testified that at the time of the accident she was going only 40 mph due to the rain. (As previously noted, the speed limit on I-20 is 70 mph.) She did not recallbut did not deny telling an insurance agent within a week of the accident that she was going 60 to 70 mph. Her brother testified that he did not know how fast she was driving. Her sister testified that while she did not know how *931 fast Carsheneka was driving, she was going at a speed appropriate for the rainy weather. According to Trooper Allen, when he spoke to Carsheneka at the hospital, she did not recall how fast she was going but she did not think she was going "all that fast."
Aldridge testified that he did not see the Beretta do anything "reckless." He estimated its speed as being about the same as his. He testified that the car spun out of control when it hit some water.[2] Pollard stated that the car was already out of control when he saw it; he "supposed" it hydroplaned. In his deposition, he stated that he saw it "go airborne or whatever you called it when it hits that water." Trooper Allen testified that when he was dispatched to the accident scene he was only five miles away and there was severe, heavy rain with heavy winds and poor visibility. According to Trooper Allen, severe heavy rains and wind are "perfect conditions" for hydroplaning.
A motorist has a duty to maintain control of his vehicle, even in rainy weather. Tolbert v. Fireman's Fund Insurance Company, 1998-637 (La.App. 3d Cir.10/7/98), 719 So.2d 738; Shephard on Behalf of Shepard v. Scheeler, 96-1690 (La.10/21/97), 701 So.2d 1308.
The doctrine of unavoidable or inevitable accident relieves a person of liability, so long as the person invoking the doctrine shows that he was in no way to blame for the happening. Davis v. Smith, 35,117 (La.App.2d Cir.10/2/01), 796 So.2d 765, writ denied, 2001-2887 (La.1/25/02), 807 So.2d 250. If a motorist has exercised ordinary care as required by law (or the highest degree of care as may be required), and has nevertheless inflicted injury on another, the accident is said to be inevitable, for which no liability attaches. Davis, supra; Clark v. Natt, supra.
In the Shephard case, a 16-year-old boy was driving a pickup truck during a rainstorm. While going around a banked curve, he lost control and collided with a dump truck stopped partially on the shoulder. Although the trial court and appellate court found no fault on the boy's part because of standing water on the roadway, the supreme court reversed in part and assessed 80% of the fault to him. In so doing, the supreme court found that the evidence did not support the boy's claim that the accident was caused by a pool of standing water near the end of the curve. We note that in the Shephard case, there was eyewitness testimony that the boy was driving at an excessive speed for the circumstances. Likewise, in Tolbert, supra, there was testimony that the delivery driver was going 52 mph in the rain before he spun out of control, crossing the center line and hitting another car head-on. The court found that his conduct in driving at almost the maximum speed limit (the speed limit was 55 mph) in a rainstorm with greatly decreased visibility was neither reasonable nor responsible. The appellate court affirmed the trial court's grant of partial summary judgment in favor of the plaintiffs on the issue of liability. While admitting that the driver might have hydroplaned as he claimed, it found that the catalyst of the hydroplaning was not just the weather but also the excessive speed at which he was traveling.
Based on the evidence presented at trial, we cannot conclude that the jury's finding *932 that Carsheneka was not negligent was unreasonable. Unlike Tolbert and Shephard, the evidence here does not show that the hydroplaning of the Richardson car was caused by Carsheneka driving at an excessive speed.
Apparently, the jury found Aldridge's testimony to be the most reasonable and believable explanation of the accident. He testified that he did not bump the Beretta, that he was traveling 45 to 55 mph, and that Carsheneka was traveling about the same speed. The trooper described the weather conditions that were present that afternoon as being conducive to hydroplaning. No expert testimony disputed this statement or established that the estimated speed of 45 to 55 mph was excessive for interstate travel under the conditions facing these motorists. (In fact, driving too slow could have posed its own dangers in interstate driving.) Aldridge testified that the Beretta appeared to hydroplane and that he took evasive actions to brake and steer clear of the out-of-control Beretta. This testimony gave the jury a reasonable foundation upon which to conclude that Carsheneka exercised reasonable care in her driving and that the collision was inevitable. It also gave them a reasonable basis upon which to base their verdict of no liability on either driver. Even if this court felt that, had it been the trier of fact, we would have reached a different conclusion, it would not be proper for this court to substitute its judgment for that of the jury in the absence of manifest error.

CONCLUSION
The trial court judgment is affirmed. Costs are assessed equally among the appellants.
AFFIRMED.
STEWART, J., dissents with written reasons.
STEWART, J., dissenting.
The facts in this case clearly demonstrate that one or both of the drivers were at fault.
La. R.S. 32:64(A) imposes a duty on the driver of a vehicle not to drive a vehicle at a speed that is unreasonable and prudent under the conditions and potential hazards then existing, having due regard for, among other things the surface of the roadway.
It is well established in Louisiana that when a collision occurs between two vehicles, one of which is in the wrong lane of travel, there is a presumption that the driver in the wrong lane was negligent, and that the burden is on him to show that the collision was not caused by his negligence. Simon v. Ford Motor Co., 282 So.2d 126 (La.1973).
The mere fact that as to a motorist a collision might have been inevitable or unavoidable at the time of its occurrence will not entitle that motorist to the protection of the doctrine of unavoidable accident if the situation thus brought about was the result of the motorist's own negligence. Nalle v. State Farm Fire and Cas. Co., 702 So.2d 854 (La.App. 3 Cir.1997) citing 2 Blashfield, Automobile Law and Practices 101.13 (rev.3d ed.1979).
The believable evidence in this case clearly proves that Carsheneka Richardson was largely at fault in this cause and there is a probability that James L. Aldridge had a lesser degree of fault. The guest passenger presumption of negligence is applicable here, and we should find an error of law was made and decide this case de novo.
STEWART, J., On Rehearing.
We granted rehearing to reconsider our prior ruling affirming the trier of fact's *933 finding of no liability on the part of either driver involved in a two-vehicle collision in which guest passengers were injured. We now reverse that finding, and from a de novo review of the record, we find that both drivers were negligent. We assess fault and award damages as set forth herein.

FACTS
The accident at issue occurred at about 1:30 p.m., on March 7, 1998, when a Chevrolet Beretta driven by Carsheneka Richardson and a 35-foot Chevrolet motor home driven by James Aldridge collided while proceeding west on I-20 in Webster Parish during a period of heavy rain and poor visibility. Carsheneka's siblings, Lorraine Richardson and Carlos McDaniel, were passengers in the Beretta. Kenneth Pollard was a passenger in the motor home. The collision occurred after the Beretta left its lane of travel, hit a guardrail on an overpass, and then veered back across to collide with the motor home in the right lane. Both vehicles then left the roadway and smashed into a bank of trees down the slope to the right of the interstate.
Lorraine Richardson and Kenneth Pollard sustained injuries in the accident and filed separate suits for damages against the drivers, Carsheneka Richardson and Aldridge, and their respective insurers, Safeway Insurance Company of Louisiana and Indiana Farmers Insurance Company. Pollard also sued his own UM carrier, United Farm Family Mutual Insurance Company. The two suits were consolidated for trial.
At trial, the parties presented two versions of how the accident occurred. Carsheneka Richardson testified that she was driving in the left lane at about 40 miles per hour and proceeding up an overpass when she felt a bump from behind. The bump caused the Beretta to begin swerving and then hit the guardrail of the overpass. Carsheneka remembered nothing more about the accident. On cross examination, Carsheneka admitted that she may have told an insurance agent five days after the accident that she was traveling at 60 to 70 miles per hour. Lorraine Richardson and Carlos McDaniel corroborated this version of the accident. Both testified that they turned and saw the motor home after it bumped the Beretta.
Aldridge testified by video deposition. A medical condition prevented him from traveling for trial from his home in Indiana. Aldridge testified that the Beretta was about 150 to 200 feet, or 10 to 12 car lengths, ahead of him in the "passenger lane," which he indicated to be the right lane. He was also driving in the right lane of travel. He stated that the Beretta seemed to raise up and go out of control off toward the left when it hit some water on the roadway. Aldridge testified that upon seeing this occur, he looked back to see what might have caused the incident. He did not see the Beretta hit the guardrail of the overpass. When he looked back ahead, the Beretta came across the roadway and collided with the front driver's side of the motor home. Both vehicles then went off the roadway. Aldridge testified that he slowed his vehicle down, but he could not avoid the accident. He estimated his speed to have been perhaps 50 miles per hour before impact. Aldridge also testified that he and Pollard had discussed pulling off the roadway at an exit to wait for the heavy rain to clear.
Pollard's testimony corroborated Aldridge's version of the accident. Pollard testified that he had been looking down at a map. He looked up and saw the Beretta spin out of control in the left lane, hit the guard rail, then shoot back across the *934 lanes of the interstate to collide with the motor home near the edge of the right lane toward the end of the overpass. Pollard explained that Aldridge had steered somewhat off the road in an effort to miss the Beretta. Pollard believed that Aldridge was driving between 50 or 60 miles per hour, which he felt was too fast for the weather conditions. On cross examination, Pollard testified that when he first looked up, the Beretta was close to the motor home; he described the distance during a deposition as 5 to 6 car lengths.
Trooper Michael D. Allen of the Louisiana State Police investigated the accident. About midway up the overpass, Allen observed red paint scrapings on the guardrail where the Beretta hit it. About midway down the overpass, he observed a gouge mark and debris in the right lane of travel. Allen testified that the gouge mark established the "maximum engagement contact," which he explained as the point of impact between the two vehicles; such marks occur almost one hundred percent of the time when two vehicles collide. Allen also measured the distances from the areas of impact to the final resting point of the vehicles. There was a distance of 360 feet from the scrapings on the guardrail to the resting point of the Beretta, and there was a distance of 159 feet from the gouge mark to the resting point of the motor home. At rest, the vehicles were about 50 feet apart. Based on these measurements, Allen estimated on cross that there was about 200 feet between the scrapings on the guardrail and the gouge mark in the right lane of travel. Allen described the weather as being windy with severe heavy rain and poor visibility; he described such conditions as perfect for hydroplaning. Allen found no brake marks and no indication of standing water.
After the accident, Allen interviewed Carsheneka Richardson at Minden Medical Center which was nearby. He testified that Carsheneka told him she was traveling west when the Beretta began spinning. She hit the guardrail and lost control. She did not know how fast she was traveling, but she did not feel that she was driving that fast. Allen denied that Carsheneka reported being bumped from behind. Carsheneka had testified that she reported this to Allen, but that he did not want to hear it. Allen interviewed Aldridge the next day. According to Allen, Aldridge reported that he was traveling westbound and that the Beretta was about a quarter of a mile ahead of him. The Beretta hydroplaned, spun out of control, hit the guardrail, and then shot back across the roadway in front of the motor home. Aldridge tried to swerve to the right to avoid a collision, but it was too late. The motor home hit the Beretta broadside, and both went off the roadway. Aldridge reported that he was traveling 45 to 55 miles per hour. In his own testimony, Aldridge admitted that he might have told the state trooper that the Beretta was a quarter mile ahead when he saw it go out of control, but he explained that he is not good at judging distances.
The jury found no negligence or fault on the part of either Carsheneka Richardson or James Aldridge, but went on to assess damages in answering the verdict interrogatory. The trial court entered judgment in favor of the defendants on June 24, 2002, and later denied motions for JNOV and new trial. The judgment was affirmed on appeal. We now vacate that ruling and reverse the judgment of the trial court.

DISCUSSION

Finding of Negligence
It is well settled that a trial court's factual findings will not be disturbed on appeal unless they are manifestly erroneous *935 or clearly wrong. Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742; Stobart v. State, through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). However, when a court of appeal finds that the trial court made a reversible error of law or a manifest error of material fact, it must, when possible, redetermine the facts de novo from the entire record and render a judgment on the merits. Ferrell, supra; Rosell, supra.
The jury was presented with two opposing, irreconcilable versions of the accident. In such a case, the trier of fact's duty is as stated in Nelson v. Zurich Insurance Company, 247 La. 438, 172 So.2d 70,72 (1965):
Where witnesses differ, the courts should reconcile, if possible, the apparent contradictions their testimony presents. If this cannot be done, then the probabilities or improbabilities of their respective statements must be considered in the light of their capacity, opportunity or incentive for observation, the amount of corroboration, if any, and the degree of proof required.
See also Michel v. State Farm Mutual Automobile Ins. Co., 314 So.2d 535 (La.App. 1st Cir.1975); Marcantel v. Aetna Casualty & Surety Company, 219 So.2d 180 (La.App. 3d Cir.1969).
Because both plaintiffs were innocent guest passengers in the automobiles involved in the accident, the guest passenger presumption also applies. This presumption provides that when "an innocent party is injured through the concurrent acts of two parties under circumstances where one or the other must be at fault, the burden is upon these parties to exculpate themselves from negligence." Eason v. Hartford Accident & Indemnity Co., 327 So.2d 187 (La.App. 2d Cir.1976); Michel, supra. This is an evidentiary, rather than a substantive rule, as it does not exempt the plaintiff from the ultimate burden of proving his or her case. O'Donnell v. Adriatic Ins. Co., 34,994 (La.App.2d Cir.7/11/01), 792 So.2d 858; Eason, supra.
Under the guest passenger presumption, the burden is on the plaintiff, who was a guest passenger, to first prove his or her own innocence as to involvement in the accident and then to prove that the circumstances of the accident compel a finding that one or both the drivers must be at fault. Once this burden is met, the burden is on the defendant drivers to exculpate themselves, not by mere denials, but by asserting facts and circumstances of affirmative force. Eason, supra; Michel, supra.
In our original opinion, the majority found the guest passenger presumption inapplicable upon determining that it had not been shown that one or both drivers must necessarily be at fault. The majority then applied the sudden emergency doctrine to support the jury's finding of no negligence on the part of Aldridge and the unavoidable or inevitable accident doctrine to relieve Carsheneka of negligence. Upon review of the facts and the applicable law, we conclude that neither doctrine is applicable because the facts and circumstances of this accident were such that the accident would not have occurred but for negligence on the part of one or both drivers.
Eason, supra, involved a collision between two southbound motorists traveling in adjoining lanes during rainy weather. This court found that the circumstances of the two vehicles proceeding in the same direction in adjoining lanes and colliding with one another mandated that one or both drivers must be at fault and that the guest passengers, who had no degree of *936 control over the drivers, were innocent in the accident.
Here, too, the record establishes the occurrence of a collision between two motorists who were traveling in the same direction and in adjoining lanes during heavy rain. Both drivers were certainly aware of the weather conditions and of the need to take proper precautions while driving so as to avoid the type of accident which occurred in this instance. Neither guest passenger had any degree of control over the actions of the drivers. These circumstances, as in Eason, supra, mandate that one or both drivers must have been at fault. By testifying as to the occurrence of the accident, the plaintiffs met their burden of proof as guest passengers by establishing circumstances under which one or both drivers must have been at fault.
We find that the jury erred as a matter of law in failing to perform its duty to reconcile the two versions of the accident and in failing to apply the guest passenger presumption to determine the negligence and fault of the defendants. This error of law requires us to conduct a de novo review of the record and to render a judgment assessing fault on the basis of our review of the facts.
Our de novo review begins with a review of the standards of conduct applicable to the drivers, Richardson and Aldridge. A presumption of negligence arises when a driver leaves his own lane of travel and strikes another vehicle. In such a case, the defendant motorist has the burden of proving that he was not guilty of any dereliction, however slight. Shephard on Behalf of Shephard v. Scheeler, 96-1690 (La.10/21/97), 701 So.2d 1308; Ferrell, supra. Moreover, a motorist has a duty to maintain control of his vehicle, even in rainy weather. Shephard, supra; Ferrell, supra. Pursuant to La. R.S. 32:64(A), a driver has a duty not to drive at a speed greater than is reasonable and prudent under the then existing conditions and potential hazards, having due regard for the surface of the roadway among other things. Tolbert v. Fireman's Fund Ins. Co., 98-637 (La.App. 3d Cir.10/7/98), 719 So.2d 738; Guy v. State, through DOTD, 576 So.2d 122 (La.App. 2d Cir.1991), writ denied, 580 So.2d 911 (La.1991). A following driver should drive at such speed and maintain such an interval as would enable him to avoid a collision with a leading car under such circumstances as should reasonably be anticipated. Rizzuto v. Bracamontes, 310 So.2d 132 (La.App. 4th Cir. 1975).
Bearing in mind our duty to reconcile the two opposing versions of the accident in accordance with the Nelson rule, we find the account of the accident as related by Aldridge and Pollard to be the most logical under the facts elicited at trial. Although Carsheneka Richardson's claim that she was bumped from behind by the motor home was supported by the testimony of both of her siblings, the fact that she did not report this information to Trooper Allen when interviewed soon after the accident casts serious doubt on the veracity of that claim. It is not reasonable to believe that Trooper Allen, whose duty it was to investigate the accident, would fail to include such salient information as the cause of the accident in his report or would refuse to entertain facts related by one of the drivers involved in the accident. According to Trooper Allen, Carsheneka reported that the Beretta began spinning and that she lost control. Her failure to maintain control of her vehicle on the wet roadway, rather than being bumped from behind by the motor home, was the most reasonable and probable cause of the Beretta hitting the guard rail and then veering back across the lanes of travel in the *937 path of the motor home driven by Aldridge.
The doctrine of inevitable or unavoidable accident relieves a person of liability so long as the person invoking the doctrine is able to show that he was in no way to blame for the incident. Seals v. Morris, 410 So.2d 715 (La.1981); Davis v. Smith, 35,117 (La.App.2d Cir.10/02/01), 796 So.2d 765, writ denied, 2001-2887 (La.1/25/02), 807 So.2d 250. The facts establish that the accident occurred during conditions of heavy rain and poor visibility. Although Carsheneka testified that she was driving about 40 miles per hour, there were indications that she had previously reported driving between 60 and 70 miles per hour. Aldridge's testimony indicates that Carsheneka's vehicle likely hydroplaned due to the wet road conditions. In addition, Trooper Allen testified that weather and road conditions were perfect for hydroplaning. While the weather and road conditions may have set the stage for an accident to occur, we do not believe that rainy weather and wet roads, both commonly encountered driving conditions, suffice to relieve a driver of liability when the driver loses control of his or her vehicle in such conditions.
Adverse driving conditions call for unusual caution on the part of motorists. King v. King, 253 La. 270, 217 So.2d 395 (1968); Tolbert v. Fireman's Fund Ins. Co., supra. Carsheneka failed to show that she exercised such caution, and in fact her only defense was that she was bumped from behind. The record establishes that she left her lane of travel while driving in rainy weather conditions on the interstate at a speed somewhere in the range of 40 to 60 miles per hour. Carsheneka failed to maintain control of her vehicle. Moreover, Carsheneka failed to show that she was in no way to blame for losing control of her vehicle, nor did she assert facts and circumstances of such affirmative force as to relieve herself of liability under the guest passenger presumption. Accordingly, we find the jury erred in failing to find her negligent and at fault in causing the accident.
We also find that the record supports a finding of some degree of negligence and fault on the part of Aldridge. A following driver should be found free from fault when he is suddenly confronted with an unanticipated hazard created by the preceding vehicle which the following motorist could not have reasonably avoided. Wheelis v. CGU Ins., 35,230 (La.App.2d Cir.12/7/01), 803 So.2d 365. To exculpate himself from fault, the following driver must show that he kept his vehicle under control, that he closely observed the forward vehicle, that he followed at a safe distance under the circumstances, and that the lead driver negligently created the hazard which could not reasonably be avoided. Id. The sudden emergency doctrine cannot be invoked by a driver who has not used due care to avoid the emergency. Anderson v. May, 01-1031 (La. App. 5th Cir.2/13/02), 812 So.2d 81.
Aldridge observed Carsheneka lose control of her vehicle and veer off to the left of the roadway. According to his own testimony, he then looked back to see what caused the Beretta to go out of control. When he looked forward again, the Beretta was in front of the motor home, and the two vehicles collided. Trooper Allen found no brake marks on the roadway when he investigated the accident. When questioned about whether he applied the brakes, Aldridge answered that he had started slowing down but he could not say when he applied the brakes. Aldridge testified that he was driving between 45 and 55 miles per hour due to the weather and that his speed was maybe 50 *938 miles per hour at impact. The evidence does not establish that Aldridge actually slowed his vehicle during the estimated 200 feet between the point where the Beretta went out of control on the ascent of the overpass to where the impact occurred midway on the descent of the overpass.
We find it troublesome that when confronted with an out-of-control vehicle ahead of him, Aldridge's first response was to look back to see what caused the vehicle to go out of control rather than to take steps to slow his speed in preparation for what might happen next. Also troublesome is the testimony regarding the distance between the two vehicles. Aldridge testified that the Beretta was 10 to 12 car lengths, or 150 to 200 feet, ahead of him when he saw it veer off to the left of the roadway. He had reported to Trooper Allen that it was a quarter of a mile ahead. In the time it took Aldridge to look back and then look forward again, the Beretta came across the roadway and the collision between the two vehicles occurred. Pollard placed the Beretta close to the motor home, perhaps within a distance of 5 or 6 car lengths, when he looked up and saw the Beretta spin out of control, hit the guardrail, and shoot back across the lanes of travel in the path of their vehicle. Pollard believed Aldridge was driving between 50 and 60 miles per hour. Pollard's testimony reasonably suggests that Aldridge was much closer to the Beretta than he claimed and was not maintaining a safe distance and speed under the conditions.
While we find that Carsheneka created a hazard on the roadway, we also find that Aldridge failed to exculpate himself from fault by showing that he was following at a safe distance or that he was unable to have reasonably avoided the collision. Aldridge's first response of looking back to see what caused the Beretta to go out of control was unreasonable. We also find that Aldridge was following more closely than he claimed and was unable to avoid the collision due to his nearness to the Beretta, and that he failed to slow his vehicle in reaction to what he observed occur some distance ahead. For these reasons, Aldridge was negligent and must be assessed with some degree of fault.

Allocation of Fault
Fault is to be allocated between Carsheneka and Aldridge in accordance with the comparative fault factors set forth in Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985). Under Watson, the factors to be considered in allocating fault include (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actors, whether inferior or superior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Applying these factors, we find that the majority of the fault for this accident belongs to Carsheneka, who lost control of her vehicle and left her lane of travel, thus creating a great risk of injury to others on the roadway. Her actions led to the collision with the motor home. It is appropriate that Carsheneka be assigned 85 percent of the fault. The remaining 15 percent of the fault is assigned to Aldridge, who although aware that the Beretta ahead of him was out of control, nevertheless looked behind him and failed to take immediate steps to slow down in an effort to avoid a possible collision.

Damages
Although the jury verdict included a determination of damages, the jury had no basis to make such a determination upon *939 finding no negligence or fault on the part of the defendants. As such, we believe the jury made an error of law in reaching the issue of damages and that no deference is due to the jury's assessment of damages. We find that a de novo review of the evidence pertaining to damages is necessary to render an appropriate award of damages in this matter.
The evidence establishes that Lorraine Richardson, age 20 at the time of the accident, sustained serious injuries and was hospitalized from the date of the accident until March 16, 1998. Her injuries included a mild closed head injury, a bruised and collapsed right lung, fractures of the third and fourth ribs, a non-displaced pelvic fracture involving the left pubic ramus, and fractures of the tibia and fibula in her right leg. Richardson was treated with a chest tube for the collapsed lung. The rib and pelvic fractures were treated with pain medication and healed over time. The fractures to her right leg required surgery, which she underwent on March 9, 1998. The purpose of the surgery was to insert a metal rod from below her right knee to just above the ankle to support the broken tibia and allow it to heal. The rod was attached to the bone with screws at the top and bottom. Dr. Kalia Sadasivan, who treated her for her leg injury, testified that he considered Lorraine to have been totally disabled for about three to five months. She underwent a subsequent surgery in March 1999, to remove some of the screws from her leg. These had been causing her some pain and discomfort.
Dr. Austin Gleason, an orthopaedic surgeon, conducted an independent medical evaluation of Lorraine in August 2001. Dr. Gleason noted scars and tissue loss associated with the leg injury. Based on his examination, he assigned a 10 percent total body impairment to Lorraine. This includes functional limitations such as avoiding excessive walking, climbing, or standing long periods of time. He also noted the possibility of her developing post-traumatic arthritis, chronic swelling, or varicose veins in the injured leg.
Lorraine testified that she was bedridden for three or four months, during which time her family had to do everything for her. Thereafter she used a wheelchair and then a walker during recuperation. She stated that her leg still hurts and that it bruises and swells when she walks on it too long. She must take frequent breaks at work. She also related that she still suffers from headaches, breathing problems, and hip pain.
Based on the testimony presented, we believe that Lorraine met the burden of proving that she sustained these injuries as a result of the accident. She is entitled to medical expenses totaling $32,124.65. Lorraine suffered extensive injuries throughout her body, and she is left with scars and residual pain and impairments. In Baudoin v. Acadia Parish Police Jury, 620 So.2d 453 (La.App. 3d Cir.1993), writ denied, 93-1880, 93-1899 (La.10/29/93), 626 So.2d 1166, an injured party sustained injuries strikingly similar to, though slightly more extensive than, those sustained by Lorraine. There, the injured party received general damages of $125,000 for collapsed lungs, an open fracture of the left tibia and fibula requiring surgery and leaving a 10% residual impairment, bilateral rib fractures, extensive bruising, and forehead lacerations. Considering the particular facts of Lorraine's injuries, we find that she is entitled to general damages of $100,000 to compensate her for the past and future pain and suffering.
Kenneth Pollard was 56 years of age at the time of the accident and was on disability due to pre-existing neck problems. *940 Pollard also had pre-existing lower back pain and degenerative disc disease. As a result of the accident, Pollard sustained multiple lacerations and abrasions, particularly along his left shoulder and arm. He also sustained a significant laceration around the lower lip area which caused him to lose four teeth. Pollard complained of injury to his left rib area and left knee. He sustained both a non-displaced fracture of the distal phalanx of his right thumb and a non-displaced fracture of the humerus in the left shoulder area, which resulted in persistent tendinitis.
Following the accident and his return to Indiana, Pollard sought treatment for the persistent pain and stiffness in his shoulder and complaints of pain from his right hip radiating down to the right thigh area. He was primarily treated by Dr. John Eric Lindner, an orthopaedic surgeon, who prescribed mild narcotics and over-the-counter medications. Despite treatment, the pain persisted and worsened. An MRI taken in February 1999, showed herniated discs at the L4-5 and L5-S1. Pollard had canceled an earlier MRI and had rejected suggestions for lumbar epidural injections. Pollard did undergo a laminectomy on August 12, 1999. Surgery was performed by Dr. Joselito Millan, a neurological surgeon who had treated Pollard since 1981. Although Pollard did have pre-existing lower back problems involving degenerative disc disease and was less than forthcoming about this issue, both Dr. Lindner and Dr. Millan attributed the development of the pain radiating down from the lower back and the herniated discs to the accident.
Liability for damages is not mitigated by the fact of the plaintiff's pre-existing condition. A defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Lasha v. Olin Corp., 93-0044 (La.10/18/93), 625 So.2d 1002, 1005-1006, and cases cited therein. When the defendant's tortious conduct aggravates a plaintiff's pre-existing condition, the defendant must compensate the victim for the full extent of the aggravation. Id.
Cases involving similar injuries include Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App. 2d Cir.1987), awarding $22,000 in general damages for loss of teeth, soft tissue injuries, and headaches; Worley v. Winston, 550 So.2d 694 (La.App. 2d Cir.1989), writ denied, 551 So.2d 1342 (La.1989), awarding $3,500 for a fractured joint of a finger and traumatic arthritis; Fergins v. Caddo Parish School Board, 31,729 (La.App.2d Cir.3/31/99), 736 So.2d 943, awarding $6,000 for a fractured humerus; Chapman v. Regional Transit Auth., 95-2620 (La.App. 4th Cir.10/2/96), 681 So.2d 1301, awarding $95,000 to a 61-year old woman with degenerative disease who incurred bulging and herniated discs from the trauma of an automobile accident, but for whom surgery was not recommended due to her age; Rudd v. Atlas Processing Refinery, 26,048 (La.App.2d Cir.9/21/94), 644 So.2d 402, writ denied, 94-2605 (La.12/16/94), 648 So.2d 392, awarding $100,000 to a 52-year old man who sustained two herniated and bulging discs in a slip and fall accident, underwent a laminectomy at two interspaces, and was permanently disabled from his job; and Thomas v. Petrolane Gas Service Ltd., 588 So.2d 711 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1201 (La.1992), awarding $85,000 for party who sustained a herniated lumbar disc and underwent a laminectomy/discectomy.
We believe the record establishes that Pollard sustained the injuries previously detailed as a result of the accident, including the herniated disc which required surgery. Accordingly, he is entitled to medical expenses totaling $30,978.90. We believe an appropriate *941 award of general damages for this particular plaintiff under the particular facts established to be $80,000.

CONCLUSION
For the reasons mentioned, the judgment of the trial court is reversed. Judgment is hereby rendered in favor of the plaintiffs, Lorraine Richardson and Kenneth Pollard, finding defendants, Carsheneka Richardson, James Aldridge, and their respective insurers liable for the injures sustained by the plaintiffs in proportion to the percentage of fault assessed to each defendant, namely 85 percent on the part of Carsheneka Richardson and 15 percent on the part of James Aldridge. Lorraine Richardson is awarded total damages of $132,124.65. Kenneth Pollard is awarded total damages of $110,978.90. Costs are assessed between the defendants in proportion to their percentage of fault.
REVERSED AND RENDERED.
BROWN, C.J., concurs.
GASKINS, J., dissents as per reasons articulated in the original opinion.
TRAYLOR, Judge Pro Tempore, also dissents per reasons articulated in the original opinion.
NOTES
[1] Due to health problems, Aldridge, an Indiana resident, was unable to attend the trial in Louisiana.
[2] Since Aldridge and Pollard were taken to a different hospital than the Richardson women, Trooper Allen did not take a statement from Aldridge until the day after the accident. His statement to the trooper that he saw the Beretta hydroplane, spin out of control, hit the guardrail and then shoot back across the roadway was consistent with his trial testimony.