WILLIAMS, J.
hThe plaintiff, Ricky Stewart, appeals a judgment in favor of the defendants, National Automotive Insurance Company, Jerry Smith, Safeway Insurance Company of Louisiana and Allison Youngblood. The trial court found that Stewart failed to prove that the defendants were liable for his injuries. For the following reasons, we affirm in part, reverse in part and render.
FACTS
On April 3, 2011, Ricky Stewart was a passenger in a pickup truck owned by Jerry Smith, who was driving on St. Vincent Avenue in Shreveport. Allison *947 Youngblood was driving her automobile on Ockley Drive. Patty Johnson was driving her vehicle behind Youngblood. There was a traffic light at the intersection of St. Vincent and Ockley. A collision occurred when Youngblood’s vehicle turned left onto St. Vincent from Ockley across the path of Smith’s truck. Stewart and Youngblood sought medical treatment as a result of the accident.
Subsequently, the plaintiff, Jerry Smith, filed a petition for damages against the defendants, National Automotive Insurance Company (“National Automotive”), his insurer, Allison Youngblood and her insurer, Safeway Insurance Company of Louisiana (“Safeway”). The plaintiff, Ricky Stewart, filed a petition against defendants, Youngblood, Safeway and alternatively, Smith and National Automotive. The two cases were consolidated for trial by the district court upon a joint motion by the parties.
At trial, Smith testified that he was driving on St. Vincent and the traffic light was green when he reached the intersection. Stewart and |2Leonard Bryant, who said that he was behind Smith’s truck, also testified that the St. Vincent light was green. Henry Scott testified that he was walking toward that intersection on Ockley prior to the accident and he saw that the light was red, but that he did not know the color of the light at the time of the collision. In contrast, Youngblood testified that she was driving on Ockley and that the light turned green as she approached the intersection. Johnson testified that as she and the preceding auto were approaching the intersection the Ockley light was red, but that the light turned green before they reached St. Vincent. Johnson further testified that the driver in front of her then entered the intersection to turn left and was hit by a truck.
After trial, the court issued oral reasons finding that the evidence did not establish that either driver was liable for the accident because of the conflicting testimony about the circumstances of the collision. The court also questioned whether all of Stewart’s medical treatment was related to his injury resulting from the accident. The trial court rendered judgment dismissing the claims of both Stewart and Smith. Stewart appeals the judgment. Smith did not file an appeal.
DISCUSSION
Stewart contends the trial court erred in failing to apply the guest passenger presumption and assess one or both drivers with fault in causing the accident. Stewart argues that the evidence supports a finding that Smith was liable for the accident because an independent witness testified that the light was green for the other driver.
In an action for damages the degree or percentage of fault of all |spersons causing or contributing to the injury shall be determined. LSA-C.C. art. 2823. In civil suits, the plaintiff has the burden of proving the negligence of the defendant by a preponderance of the evidence. In certain situations, the party with the burden of proof may be aided by a presumption. Miller v. Leonard, 588 So.2d 79 (La.1991).
An automobile collision case may involve the guest passenger presumption, which provides that when an innocent party is injured through the concurrent acts of two parties under circumstances where one or the other must be at fault, the burden is upon these parties to exculpate themselves from negligence. Eason v. Hartford Accident & Indem. Co., 327 So.2d 187 (La.App. 2d Cir.1976). The guest passenger rule is an evidentiary rule, not a rule of substantive law, and *948 does not exempt the plaintiff from the burden of proving his case. Eason, supra.
Under the presumption, the plaintiff guest passenger must first prove his innocence as to the accident and second, he must prove that the circumstances of the accident compel a finding that one or both drivers must be at fault. Once the plaintiff meets this burden, each defendant driver then must attempt to exculpate himself, not by mere denials, but by asserting facts and circumstances of affirmative force. Richardson v. Aldridge, 37,192 (La. App.2d Cir.5/16/03), 854 So.2d 923, writ denied, 2003-3034 (La.2/6/04), 865 So.2d 743; Eason, supra.
Where witnesses differ, the courts should reconcile if possible the apparent contradictions of their testimony. If this cannot be done, then the probabilities or improbability of their respective statements must be | considered in light of their capacity, opportunity or incentive for observation, the amount of any corroboration and the degree of proof required. Miller, supra; Richardson, supra.
A trial court’s factual findings will not be disturbed on appeal unless they are .manifestly erroneous or clearly wrong. Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742. However, upon finding that the trial court made a reversible error of law or a manifest error of material fact, an appellate court must, when possible, redetermine the facts de novo from the entire record and render a judgment on the merits. Ferrell, supra; Richardson, supra.
In the present case, Patty Johnson testified that after shopping she was driving on Ockley directly behind Youngblood’s vehicle. Johnson stated that she did not personally know Youngblood, Smith or Stewart. Johnson testified that when initially approaching the intersection at St. Vincent, the light on Ockley was red and the car in front of her was stopping; however, just before they reached the intersection, the light turned green, Youngblood’s auto entered the intersection to turn left and was hit by a pickup truck. Johnson stated that she was positive the light on Ockley was green when the car in front of her entered the intersection. Johnson testified the police officer at the scene did not ask her any questions and she did not wait because she had provided her contact information to Youngblood and was on her way to get her grandson. Johnson explained that she submitted a written witness statement to the police the following day.
Corporal C. Rose, a Shreveport police officer, testified that he arrived |Bat the accident scene at 8:22 p.m. and prepared a report after speaking with the drivers. Cpl. Rose stated that Youngblood seemed slightly disoriented from the collision and he initially understood her to say that she was turning left from St. Vincent onto Ockley. He explained that he spoke with her a day later and she said that actually she had been turning from Ockley. Cpl. Rose testified that the damage to the driver’s side of Youngblood’s vehicle was consistent with her entering the intersection on Ockley. Cpl. Rose also testified that Smith had stated he was driving north on St. Vincent and that his light was green. Cpl. Rose stated that he was given Johnson’s witness statement after he had completed the accident report. Cpl. Rose explained that his notation in the report that Youngblood’s vehicle failed to yield was based on his initial mistaken belief that she had turned left from St. Vincent in front of an oncoming vehicle. Cpl. Rose testified that the traffic light appeared to have been functioning properly at the time of the accident and that he did not see any indication the signal was defective.
*949 Jerry Smith testified that prior to the accident he was driving along St. Vincent on the way to assist his nephew, Michael, whose auto had broken down. Smith stated that he asked Stewart to accompany him to help tow Michael’s auto back to his house. Smith testified that he saw the light on St. Vincent was green when he was approximately two blocks from Ockley and the light remained green until he reached the intersection. According to Smith, he was driving approximately 25 to 30 miles per hour and slowed slightly when near the intersection, but he did not see the other vehicle before the collision. Smith asserted that although he was almost blind in his Rleft eye, he could see “pretty good.”
Allison Youngblood testified that before the accident she was driving on Ockley toward her home. Youngblood stated that as she approached St. Vincent, she saw that the light on Ockley was red and she slowed down, but then the light turned green. Youngblood testified that as she proceeded into the intersection to turn left, her auto was hit on the driver’s side by a pickup truck. Youngblood stated that when she saw the red light she applied her brake, but she did not come to a complete stop because the light turned green before she reached the intersection and she then took her foot off the brake. Youngblood testified that when the light turned green she entered the intersection and did not look to her left.
Ricky Stewart testified that he was a passenger in Smith’s pickup truck and as they approached the Ockley intersection the light on St. Vincent was green. According to Stewart, as Smith reached the intersection, the other vehicle came across their lane and Smith’s truck hit the driver’s side of the vehicle. Stewart also testified that he saw a red light on St. Vincent when Smith’s truck was approximately three car lengths from the intersection traveling at 35 miles per hour and that he did not slow down because the light turned green. However, Stewart acknowledged previously stating in his deposition that he had seen a green light when Smith was three car lengths from the intersection. Stewart testified that he first saw the other vehicle pass in front of the truck as Smith was going through the light. Stewart stated that he was Smith’s neighbor and had known him for a number of years.
17Leonard Bryant testified that he knew of Smith, who had lived across the street from his mother for many years. Bryant stated that while living with his mother he had seen Smith coming and going, but that they had never met or spoken prior to the accident. Bryant testified that at the time of the accident he had been driving on St. Vincent approximately three car lengths behind Smith’s truck. Bryant stated that he was approximately two to three blocks from the intersection when he saw that the light was green, that the light remained green and that neither he nor Smith slowed down as they neared the intersection. Bryant testified that he stopped briefly after seeing Smith’s truck hit the other vehicle in the intersection, but he then drove away without getting out of his vehicle. Bryant testified that he drove through the same intersection some time later and saw the police at the scene, but he did not stop to identify himself as a witness to the accident. Bryant stated that he first spoke with Smith some months later when he recognized Smith at a grocery store and asked him about the accident. Bryant testified that he gave a statement about the accident to Smith’s attorney approximately four months after the collision.
This record shows that Stewart, as a guest passenger who did not exercise control over either driver, was innocent *950 from fault. In addition, the circumstances of the collision in an intersection controlled by a traffic light compel a finding that one or both of the drivers must be at fault. Thus, the trial court erred in failing to apply the guest passenger presumption and determine whether either defendant exculpated himself from fault. Consequently, we must conduct a de novo review of the record and render | ¿judgment assessing fault based upon our consideration of the evidence.
The investigating police officer testified that the traffic light was functioning properly at the time of the accident. We note that the testimony of Smith, Stewart and Bryant that the light on St. Vincent was green for a period of time as they approached the intersection does not contradict Youngblood’s testimony that the Ockley light was red when she was approaching the intersection at the same time. Although Smith stated that he was looking at a green light when he reached Ockley, his testimony that he failed to see Youngblood’s vehicle before the collision indicates that his attention was likely not directed toward the traffic light as he neared the intersection. In addition, the damage to the front driver’s side of Young-blood’s vehicle shows that she had entered the intersection before the collision, so that Smith should have seen her vehicle sooner had he been looking toward the traffic light.
Furthermore, Youngblood testified that she was positive that the light on Ockley was green when she entered the intersection and her -testimony was corroborated by that of Johnson, a disinterested witness. We note that the trial court specifically found that Johnson was credible, but did not make a similar finding about Bryant. The record shows that Johnson provided her contact information to Youngblood immediately after the accident and submitted a written witness statement to police the next day. In contrast, Bryant did not identify himself as a witness to anyone at the accident scene and did not make a statement about the collision until four months later and only after discussing the accident with Smith, his mother’s neighbor. After 13considering the testimony as a whole, we find that Johnson is the more reliable witness.
Based upon this record, we conclude that Youngblood exculpated herself from fault by presenting evidence demonstrating that Smith’s failure to maintain a proper lookout and stop at the red light was the cause of the collision. Thus, the trial court erred in finding that Smith is not liable and we shall reverse that portion of the judgment.

Damages

Stewart contends the trial court erred in failing to award damages. Stewart argues that a damage award is supported by evidence that his injuries were caused by the auto accident.
An appellate court may award damages when the trial court initially denies the plaintiffs demands and the record contains sufficient proof of damages. Beckham v. St. Paul Fire and Marine Ins. Co., 614 So.2d 760 (La.App. 2d Cir.1993). In making an initial award of damages at the appellate level, we set the award in an amount which is reasonable compensation for the damages shown by the record. Beckham, supra.
In the present case, Stewart was transported from the accident scene to the hospital by EMS, but he left before being seen. Two days later, Stewart returned to the emergency room of LSU Health Sciences Center complaining of neck and low back pain. The physical exam showed muscle spasm and limited range of motion of Stewart’s neck. He was diagnosed with *951 neck sprain and pain relief medication was prescribed. The total amount of this hospital treatment was $681.98.
|inLorenzo Erickson, a licensed chiropractor, testified that Stewart was seen at the Mayfield-Bacon Clinic for three visits in April 2011, with complaints of neck and low back pain after an auto accident. Dr. Erickson stated that Stewart’s physical exam showed a muscle spasm in his lower back, tightness in his neck and swelling in both knees. Dr. Erickson reported that Stewart was treated with moist heat and electric muscle stimulation on each visit. Dr. Erickson opined that Stewart’s physical symptoms were caused by the auto accident. The total amount for Stewart’s chiropractic treatment was $853.
Dr. Richard Kamm testified that he first saw Stewart on June 80, 2011, with complaints of pain in his lower back and knees. Dr. Kamm stated that Stewart’s physical exam showed tenderness in his lower back with increased muscle tension, but no spasm, and no swelling of the knees. Dr. Kamm diagnosed Stewart with muscle strain of the lower back and soft tissue injuries to both knees. Dr. Kamm reported that he saw Stewart in July 2011, when he said his knees were better, but he still felt back pain. After each visit, Dr. Kamm prescribed anti-inflammatory and pain medication. Dr. Kamm testified that Stewart’s last visit was August 24, 2011, when he said his low back had improved, but he still felt knee pain. Dr. Kamm stated that he recommended an x-ray of Stewart’s knees because the normal exam of his knees did not explain his pain complaints. Dr. Kamm opined that Stewart’s low back strain and injuries of both knees resulted from the auto accident. The total amount of Dr. Kamm’s treatment was $920.
The record shows that Stewart was injured as a result of the 1 n automobile accident and required the above stated medical treatment. Stewart was also charged $344.54 for pain medication. Thus, Stewart is entitled to an award of medical expenses in the amount of $3,423.52.
In addition, Stewart testified he still felt intermittent pain, but he was able to work and his physical symptoms did not require him to give up any hobbies or other activities. We note that Stewart’s soft tissue injuries had substantially resolved within four months. Dr. Kamm opined that at the time of Stewart’s visit in August 2011, his prognosis was good to excellent. Based on the medical evidence presented, we conclude that Stewart is entitled to a general damage award in the amount of $3,000.
CONCLUSION
For the foregoing reasons, that portion of the judgment dismissing Ricky Stewart’s claims against National Automotive Insurance Company and Jerry Smith is reversed. Judgment is hereby rendered against National Automotive Insurance Company and Jerry Smith, awarding Ricky Stewart total damages of $6,423.52. Expert witness fees of $750 for Dr. Kamm and $500 for Dr. Erickson are assessed as court costs to National Automotive Insurance Company and Jerry Smith; the judgment is otherwise affirmed. Costs of this appeal are assessed to the appellees, National Automotive Insurance Company and Jerry Smith.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.