GARRETT, J.
LThe defendants, Jacob Griffin and US-Agencies ’ Casualty Insurance. ■ Company (“USAgencies”), appeal from a trial court judgment finding that Gjiffin was. negligent, and .solely .at fault in causing the automobile accident in this case. For the following reasons, we affirm.
FACTS
The accident at issue here occurred on March 27, 2014, shortly before 7;00 a.m., when the parties and witnesses were traveling to work and school. The plaintiff, Vicke Mosley, _ was traveling south on Mansfield Road and Griffin was driving east on Valley View Drive in Shreveport. Mosley claims that Griffin fáiled to stop at the red light at the intersection of the two roads and collided with her vehicle. She filed suit against Griffin and his insurer, USAgencies; claiming personal, injury and property damage. . . '
A short bench trial was held on April 15, 2015.[1] The parties agreed to tlie introduction of several depositions and numerous exhibits, including pictures of the damage to Mosley’s vehicle, hospital records, and bills. They also stipulated that the policy limits were $15,000 bodily injury for one person, $30,000 bodily injury for two or more persons, and $25,000 for property damage. They agreed that the plaintiffs property damage amount was $2,000, exclusive of storage fees. Defense counsel stated that the plaintiff’s attorney provided *19 him with a traffic signal inventory (“TSI”) on the day of trial. Defense counsel agreed to waive any objection to the introduction of the document. In exchange,'the plaintiff agreed not to seek any judgmént in excess of the- insurance policy limits, ■exclusive of interest ] 2and court costs. The court then heard testimony from the two drivers involved in the accident.
Griffin testified that, on the morning of the accident, he approached the intersection and the light was red. He was'"en route to his job installing dry wall. He was the first car in line and sat at the light for a couple of minutes. He claimed that the light turned green and he proceeded into -the intersection where the accident occurred.[2] He was familiar-with the intersection and had lived close by for many years. He stated he was not very sure about the light sequences, but thought it had remained the same in the years he had been going through the intersection.
Mosley testified that she was en route to her job at a nursing home. When she approached the intersection of Mansfield Road and Valley View, she saw a car coming from Valley Viéw “a little bit fast.” She testified that She'had the green light. She was in the right lane and tried to manéuver into the left lane in case the ear was going to turn. She proceeded into the intersection where the collision occurred and, as a result, she lost consciousness. Mosley woke up lying in the street and was taken to the hospital by ambulance. She suffered á cut on her heck that left a scar, an injury to her hánd, and aggravation ' of a pre-existing hernia. Also, her heart was impacted. She was hospitalized for three days with a decreased heart rate.
The TSI, dated February 18, 2011, contained a detailed diagram of the intersection and the location of-the traffic signals. It also showed the Rlength of time the lights were red, yellow, and green. The trial court questioned whether there was a more recent TSI. Counsel for the plaintiff stated that the light sequencing was the same now, and at the time of the accident, as > in 2011. Mosley testified she travels through the intersection daily on her way to work and is familiar with the sequencing of the traffic lights. She was questioned about whether the sequencing of the lights -is the same now as - it was when the accident occurred. The trial court stated,- “I can call the traffic people and see whether or not — .” Counsel for the plaintiff replied, “I’m fine with that, Your Honor. It’s the truth. I mean whatever the truth is we -want to have it in the record.” Counsel for the defendant did not make any comment on this issue. The discussion on the record then turned away from whether the trial court should call the city traffic engineer. It was noted on the record that there were three depositions the court needed to read. The court stated it typuld look at everything, including the TSI, and wanted to “make sure I’ve got the TSI sequence down correctly,,, too.!’
Griffin was re-cálled to testify about the sequencing of the traffic lights. He said he was not sure about the sequences, but was sure he had the green .light when he entered the intersection.
The deposition of Shaquadolyn Gay was introduced into evidence. Gay was only 16 years old and was driving herself and her four siblings to school at North DeSoto "High School on the morning of the accident. Gay was in. traffic behind Mosley. According to Gay, Mosley was slightly ahead of her in traffic and was traveling at 55 or 60 miles per hour (“mph”) in an |4area where the speed limit was 45 mph, but then she slowed to 50 mph. At one *20 point in her deposition, Gay said the light at the intersection turned red and she stopped, but Mosley kept going and ran the red light. In a short written statement to the police, Gay said that Mosley’s car was trying to make the light, but the .light had already turned red. She claimed that Griffin’s car had the green light, but once he started to go, he hit Mosley’s car. However, later in her deposition, Gay was questioned further about the exact way the accident occurred. She said that Mosley’s vehicle was getting ready to pass the white stop line at the intersection when the light turned yellow. Gay said Mosley was in the intersection when the light turned yellow.
The deposition of Ronnie Roberson was introduced into evidence: He testified that, on the morning of the accident, he was stopped at the red light behind Griffin’s vehicle. He was en route to his job at Frymaster, where he had worked for 22' years. He said that Griffin’s car whs “creeping out” into Mansfield Road ánd that Griffin’s light was red when the collision occurred. Roberson called 911. According to Roberson, Mosley’s husband or boyfriend arrived at the scene and caused a disturbance because he did not think emergency personnel were caring for Mosley in a timely fashion. The police officer working the scene tried to calm him down. Roberson had to go to work and gave his phone number to the police before leaving the accident scene. Unfortunately, the number was written down incorrectly and Mosley eventually contacted Roberson through Facebook. Roberson executed an affidavit on April 22, 2014, describing what he saw.
| ¿Officer Vincent E. Baurichter with the Shreveport Police Department worked the accident and portions of his deposition were admitted into evidence. He said that the marks on the pavement matched Mosley’s statement that she swerved to avoid 'Griffin. He talked to witnesses at the scene. Roberson told him that Griffin started out too soon from the red light. The officer acknowledged that Mosley’s husband or boyfriend arrived at the scene and caused a disturbance, which distracted the police from dealing with the accident.
The trial court filed its written opinion on April 21, 2015,. The court noted that Griffin claimed his light was green and that Gay said Mosley’s light turned yellow while she was in the intersection and the light quickly changed to red. The court noted Roberson’s testimony that Griffin ran the red light. The court stated:
A traffic signal inventory was also introduced into evidence, said traffic signal inventory being dated February 18, 2011, approximately two years prior to the accident in question. This court contacted the Shreveport city traffic engineer regarding this accident as well. This court spoke with the Shreveport city traffic engineer who informed this court that the yellow light at this intersection in the direction that Ms. Mosley was traveling would remain yellow for 4.3 seconds. The red light remaining red for 1.5 seconds, therefore a total of 5.8 seconds before the green light on Valley View would appear. Based on the testimony of the witnesses the traffic signal inventory and this court’s conversation with the city traffic engineer it would appear that the light for Mr. Griffin, at the time of the accident, would have been red and if it had changed green Ms. Mosley had already preempted the intersection.
Therefore, this court finds in favor of the plaintiff and against the defendant regarding liability.
Judgment was . signed on May 19, 2015, finding 100% liability on the part of Griffin. The court awarded Mosley bodily in *21 jury damages in the Impolicy limit amount of $15,000 and property damages in the amount of $2,000.
The defendants appealed, arguing that the trial court erred in .finding Griffin to .he solely liable for causing the. accident. They also assert that the trial court committed reversible error for engaging in ex parte communication, conducting an independent investigation, and considering evidence not in the record.
LIABILITY
The defendants contend that the trial court committed reversible error in finding Griffin to be solely liable in causing the accident. They maintain that the two eyewitnesses gave diametrically opposing testimony. According to the defendants, Griffin’s testimony was more logical and consistent, and Mosley's was self-serving. The defendants urge that, if the court cannot say who had the red light and who had the greenj the case has to be .dismissed. These arguments are without merit.
Legal Principles
The appellate court may not set aside a trial court’s factual findings in the absence of manifest error or unless such findings are clearly wrong. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993); Baker v. State Farm Mut. Auto. Ins. Co., 49,468 (La.App.2d Cir.1/21/15), 162 So.3d 405; Smart v. Calhoun, 49,943 (La.App.2d Cir.7/29/15), 174 So.3d 168. To reverse the factual findings of thé trial court, the ap-. pellate court must review the record in its entirety and find that there is no reasonable factual basis for the findings and that the record establishes that the trier of fact was |7clearly wrong or manifestly erroneous. Salvant v. State, 2005-2126 (La.7/6/06), 935 So.2d 646; Smart v. Calhoun, supra. The reviewing court does not ascertain whether the trier of fact was right or wrong, but whether its conclusion was reasonable in light of the evidence in the record. Stobart v. State, through DOTD, supra; Smart v. Calhoun, supra; Leonard v. Lee, 49,669 (La.App.2d Cir.4/29/15), 165 So.3d 1083; Baker v. State Farm Mut. Auto. Ins. Co., supra.
 Although it may have made different factual findings and reached a different decision, the appellate court must not reweigh the evidence or substitute its own factual findings. Where the trial court’s factual conclusions are based on credibility determinations of a witness, the manifest error standard demands great deference to the trier of fact. Although an appellate court may feel its own evaluations of credibility and reasonable inferences of fact are as reasonable as those of the trial court, the reviewing court should not disturb reasonable factual findings when there is conflict in the testimony. Leonard v. Lee, supra.
In an action for damages, the degree or percentage of fault of all persons causing or contributing to the injury shall be determined. La. C.C. art. 2323. In civil suits, the plaintiff has the burden of proving the negligence of the defendant by a preponderance of the evidence. Smith v. Safeway Ins. Co. of La., 49,136 (La.App.2d Cir.8/13/14), 146 So.3d 944.
In assessing liability, the trier of fact must compare the relative fault of the parties. The decisions of the trier of fact, as to the amount of fault, if any, attributable to a party, and the apportionment of fault are questions .of ] ¡¡fact. The manifest error/clearly wrong standard applies to the review of the trier of fact’s allocation of fault. Leonard v. Lee, supra; Baker v. State Farm Mut. Auto. Ins. Co., supra. See, also Young v. Marsh, 49,496 (La.App.2d Cir.11/19/14), 153 So.3d 1245.
*22 The accident at issue occurred in the vicinity of an intersection controlled by traffic-control signals. La. R.S. 32:232 provides, in pertinent part:
Whenever traffic is controlled by traffic-control signals exhibiting different colored lights, or colored lighted arrows, successively one at a time or in combination, only th.e colors green, red, and yellow shall be used, except for special pedestrian signals carrying a word legend, and said lights shall indicate and apply to drivers of vehicles and pedestrians as follows: '
(1) GREEN indication:
(a) Vehicular traffic facing a circular green signal .may proceed straight through or turn right or left unless a sign at such place prohibits either such ¡turn. But vehicular traffic, including vehicles turning right or left, shall stop and yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited.
[[Image here]]
(2) Steady YELLOW indication:
(a) Vehicular traffic facing á steady yellow signal alone is thereby warned that the related green signal is being terminated or that a red signal will be exhibited immediately thereafter and such vehicular traffic shall not enter the intersection when the red signal is exhibited.
[[Image here]]
(3) Steady RED indication:
(a) Vehicular traffic facing a steady circular red -signal alone shall stop at a clearly marked stop line, or if none, then before entering the crosswalk- on- the near side of-the intersection, or if none, then before entering the intersection,- and shall remain | Sstanding until an indication to proceed is shown except as provided in Subparagraph (c) of this Paragraph.
A vehicle facing a green circular signal may proceed* through the -intersection, but- shall yield the right-of-way to other vehicles lawfully within the intersection at the time such signal is exhibited. See La. R.S.- 32:232; Lewis v. Smith, 40,-590 (La.App.2d Cir.1/25/06), 920-So.2d 920. A motorist favored with a green signal when approaching an intersection cannot depend exclusively on the favorable light. Rather, the motorist has a duty to watch for vehicles already in the intersection when the light changed; this duty does not extend to looking for traffic that has not yet entered the intersection. Lems v. Smith, supra. See also Harris v. State Farm Mut. Auto. Ins. Co., 287 So.2d 560 (La.App. 2d Cir.1973), writ denied, 290 So.2d 335 (La.1974); Smart v. Calhoun, supra; Gardner v. State Farm Mut. Auto. Ins. Co., 43,499 (La.App.2d Cir.9/17/08), 996 So.2d 320.
In order to preempt an intersection, the motorist must show that he made a lawful entry, at a proper speed, after ascertaining that oncoming traffic was sufficiently removed to permit a safe passage and under the bona fide belief and expectation that he can negotiate a crossing with safety. He- must show that he entered the intersection at a proper- speed and sufficiently- in advance of the vehicle on the intersecting street to permit him to cross without requiring an emergency stop by the other vehicle. Price v. City of Slidell, 1997-2066 (La.App. 1st Cir.9/25/98), 723 So.2d 455; Gardner v. State Farm Mut. Auto. Ins. Co., supra.
| mPiscussion
The evidence supports -the trial court finding that Griffin was solely at fault in causing this accident. Mosley established that Griffin ran the red light and *23 struck her vehicle. Mosley stated that her light was green and she proceeded into the intersection. . She then- saw Griffin and swerved in an attempt to avoid the collision. Although Gay initially stated that Mosley ran the red light, upon further questioning, she clearly testified that Mosley had entered the intersection when. the. light turned yellow. Roberson testified that Griffin was drifting out into the. intersection while the light was red and ran the red light. The trial court was not manifestly erroneous or clearly wrong in finding that Mosley, Gay, and Roberson were, more credible witnesses than Griffin, particularly in light of the fact that Griffin is a convicted felon.
The evidence and testimony show that Mosley proved by a. preponderance of the evidence that she had preempted the intersection and Griffin had a duty to watch for vehicles already in the intersection. His failure to do so resulted in this accident and the trial court did not err in concluding that Griffin was solely at fault.[3]
EVIDENCE OUTSIDE THE RECORD The defendants claim that the trial court committed reversible error in engaging in ex parte communication, conducting an independent | ^investigation, and considering evidence not in the record. They strenuously object on appeal to the trial court’s action in contacting the Shreveport city traffic engineer regarding the TSI. The defendants claim the trial court relied upon facts not in evidence and engaged in ex parte communications on a substantive matter pertaining to the merits of the case. They assert the trial court acknowledged ¾ its written opinion that its .ruling was not based on evidence presented at trial. The defendants maintain that the trial court’s actions are a violation of .the Louisiana. Code of Judicial . Conduct and constitute reversible enror. ..They ask this court to reverse the ruling and remand the matter for a new trial before a different judge. These arguments are without merit.
Discussion
The parties stipulated to the admissibility of the TSI for the intersection at issue here., The TSI contains a detailed diagram of the intersection .and a listing of how long each light, at the intersection remained red, yellow, and green. The document contained relevant evidence bearing on the accident in this case.[4] The trial' court questioned, on the record, whether the TSI was still accurate because it had been prepared two years' prior to the accident. The trial court' stated it would call the city engineer and inquire whether the TSI was still in effect. At trial, ’ plaintiff s counsel encouraged the court to do so and' defense counsel said riothing. Upon questioning at oral argument before this court, both counsel ac-knowledgedJjjthat, after the conclusion of the trial, and off the récord, the trial court again told both. counsel it would call the traffic engineer, to determine whether the TSI was still in effect. Defense counsel *24 acknowledged he heard this communication. Again, he did not voice any objection.
After receiving the trial' court reasons for judgment showing that the trial court contacted the city traffic engineer, defense counsel chose not to file a motion for new trial. This would have allowed the trial court to address defense counsel’s arguments on this issue. A new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only. See La. C.C.P. art. 1971. Peremptory grounds for a new trial include when the verdict or judgment appears clearly contrary to thé law and the evidence. See La. C.C.P. art. 1972. Also, the trial court has discretion to order a new trial if there is good ground therefor, except as otherwise provided by law. See La. C.C.P. art. 1973.
Our examination of the record shows that the trial court ruling did not rely on facts outside the record. The information gleaned by the trial court’s contact with the city traffic engineer was confirmation that the TSI filed into evidence was still in effect on the date of the accident. The information mentioned by the trial court in its reasons for judgment, regarding the length of time the lights at the intersection were red, yellow, and green, were the exact same times listed on the TSI admitted .into evidence by stipulation of the parties. This information was clearly admitted into evidence without objection and was available to defense counsel at trial. The defendants have | ^failed to demonstrate that the city traffic engineer provided the court with any other information not available to both counsel or that defense counsel was not aware of information relied on by the trial court or was denied the opportunity to question or defend against the information.
The defendants assert that the trial court discussed substantive matters pertaining to the merits of the case and thereby violated the Louisiana Code of Judicial Conduct.[5] In support of their argument, the defendants cite several cases decided by the Louisiana Supreme Court on judicial disciplinary matters. As discussed above, we find no error by the trial court. However, it is well settled that the constitution vests the supreme court with exclusive original jurisdiction over judicial disciplinary cases. La. Const. Art.. V, §. 25; Prejean v. Barousse, 2012-1177 (La.1/29/13), 107 So.3d 569. Arguments regarding alleged violations of the Louisiana Code of Judicial Conduct are not properly before this court and will not be considered.
*25 |uIn hindsight, it would have been preferable for the trial court to hold all discussions regarding contact with the city traffic engineer on the record, with a court reporter present. We find no reversible error under the unique facts of this case, in which both counsel have acknowledged to this court that there was another discussion on this issue immediately after the case was tried and submitted. From the trial court’s perspective, it appeared that, the parties were amenable to the trial court checking with the city traffic engineer’s office to confirm that the information shown on the TSI was applicable on the date of the accident, since no objection was ever raised.
In determining the effect of legal error, the party alleging error has the burden, of showing, the.error was prejudicial to his case. Error is prejudicial when the error is material and, when compared to the record in its totality, has a substantial effect on the. outcome of the case. Prejudicial error is reversible error. Error that is not prejudicial is harmless error and is not reversible error. Duzon v. Stallworth, 2001-1187 (La.App. 1st Cir.12/11/02), 866 So.2d 837, writs denied, 2003-0689, 2003-0605 (La.5/2/03), 842 So.2d 1101; Neumeyer v. Terral, 478 So.2d 1281 (La.App. 5th Cir.1985), writ denied; 481 So.2d 631 (La.1986). See also Pratt v. Culpepper, 49,627 (La.App.2d Cir.2/27/15), 162 So.3d 616.
.[11] Although we find, limited to the facts of this case, that no error occurred, even if the trial court had erred in contacting the city traffic engineer, the error would be harmless. As discussed above, all information relied upon in the trial court ruling was contained in the TSI, which was admitted into evidence without objection. Further, even if the TSI was 11 f,excluded from consideration in this matter, there is ample evidence through .the testimony of Mosley and the depositions of Roberson and Gay to support: the trial court finding that Griffin ran the red light and hit Mosley after she had preempted the intersection. The defendants have failed to show that they were prejudiced in any way by the actions of the trial court.
CONCLUSION
For the reasons stated above, we affirm the trial court judgment finding that Jacob Griffin was solely liable for causing the agcident in this case and in ordering Griffin and his insurer, USAgencies Casualty Insurance Company, to pay the plaintiff, Vicke Mosley, $15,000 in damages for bodily injury and $2,000 for property damage. All costs in this court are assessed to the defendants.
AFFIRMED.

. The entire trial transcript, including the cover page, index, and certification', consists of only 29 pages.

.‘ Griffin acknowledged that he had previously been convicted of simple burglary.

. We cannot help but note that Mosley’s special and general damages far exceed the $15,000 bodily injury policy limits at issue in . this case. She was ejected from her. car, knocked unconscious', and spent three days in the hospital. Her, medical ■ bills were $14,075,50, and her wrecker and storage bill was $532.01. Assuming a trier of fact assessed her with some comparative fault, she would still clearly be entitled to the amount of judgment awarded in this case. Mr. Griffin appears to have benefitted greatly from the plaintiff’s agreement not to seek an excess •judgment.

. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would.be without'the evidence. La. C.E. art. 401.

. The relevant portion of the Louisiana Code of Judicial Conduct is found in Canon 3(A)(6) which states, in pertinent part:
A. Adjudicative Responsibilities.
(6) Except as permitted by law, a judge shall -not permit private or ex parte interviews, arguments or communications designed to influence, his or her judicial action in any case, either civil or criminal. A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond. Where circumstances require, ex parte communications are authorized for scheduling, administrative purposes or emergencies that do not deal with- substantive matters or issues on the merits, provided the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication. A judge shall not knowingly accept in any case briefs, documents or written communications intended of calculated to influence his or her action unless the contents are promptly made known to all parties.