COX, J.
*569 This appeal is from the Third Judicial District Court, Lincoln Parish, Louisiana. The plaintiffs, Darrell Charles and Alton Adams (hereinafter referred to as "Charles" and "Adams," respectively), brought suit against Robert Price (hereinafter referred to as "Price") and his insurance carrier, USAA Casualty Insurance Company, after a car accident in an intersection controlled by traffic signals. The trial court found in favor of Price. The plaintiffs now appeal. For the following reasons, we affirm the trial court's judgment.
FACTS
This suit arises from an automobile collision in Ruston, Louisiana, on October 15, 2016, at 9:22 p.m. The plaintiffs were passengers in Freddie Maxwell's Honda Accord. Price was driving a Mitsubishi Lancer owned by his father, Jeffrey Price, and insured by USAA Casualty Insurance Company. The two vehicles collided at the intersection of West California Avenue and South Trenton Street, which is controlled by a red light. Price was traveling southbound on S. Trenton St. Maxwell was traveling westbound on W. California Ave. The issue at trial was which driver ran the red light.
The plaintiffs filed a petition for damages on April 18, 2017, claiming Price ran the red light and caused the accident and specifically pleading the doctrine of res ipsa loquitor. Charles claimed he sustained serious injuries including injuries to his back, neck, chest, abdomen, ribs, both hands, head, and emotions. He claims his head injuries have been accompanied by headaches and dizziness. Charles also claimed damages of past and future loss of enjoyment of life, inconvenience, past and future pain and suffering, past and future mental anguish and emotional distress, past and future medical expenses, past and future loss of earnings, past and future loss of earning capacity, lost wages, past and future disability, past and future physical impairment, negligent infliction of emotional distress, medical related expenses and bills, and all non-economic damages.
Adams claims he sustained injuries to his lower back, neck, right shoulder, right hand, ribs, head, and emotions. He claims his head injuries have been accompanied by headaches. Adams also claims damages of past and future loss of enjoyment of life, inconvenience, past and future pain and suffering, past and future mental anguish and emotional distress, past and future medical expenses, past and future loss of earnings, past and future loss of earning capacity, lost wages, past and future disability, past and future physical impairment, negligent infliction of emotional distress, medical related expenses and bills, and all non-economic damages.
The bench trial began on September 25, 2018. Price testified as to the following:
• He did not stop at a red light at the intersection of S. Trenton and W. California.
• He did not see the Maxwell vehicle until the crash occurred.
*570 • After the initial impact, his vehicle rotated about 200 degrees, striking a pole, and the Maxwell vehicle kept going and crashed into a building.
• He never heard any horns blowing prior to the collision.
• When he first observed his traffic light, it was green, and it remained green.
• Immediately after the collision, there was an altercation between Maxwell and Price. A stranger, Tori Ward, witnessed the accident and protected Price from Maxwell while he was on the ground. Ms. Ward's boyfriend, Jacob Davis, also witnessed the accident and ended up getting involved in an altercation with Maxwell to protect Ms. Ward. A third witness, Morgan Lolley, was also present after the collision.
• Officers performed a field sobriety test on him (Price), which he passed.
• He saw Charles removed from the Maxwell vehicle on a stretcher.
Ms. Lolley, an independent eyewitness, was the next to testify. She testified that she gave her statement to police on the same day as the accident. She stated that she did see the accident, but the police report stated, "Lolley stated that she did not see the wreck happen, but she did see Maxwell attack Price." Ms. Lolley testified that she was driving behind Price when the accident occurred. She stated they were both stopped at a red light. She testified that when the light turned green, both vehicles started moving, and she was waiting on Price to go so she could turn right.
Ms. Ward, the second independent eyewitness, testified next. She stated that she had never given a statement to police regarding the accident. She testified that she was in the backseat while Ms. Lolley was driving. Ms. Ward testified that she was looking at her phone, and when the car started moving, she looked up and saw the green light. She stated that when she looked up, she saw a "car flying across out of the corner of [her] eye." She testified that she did not see the actual collision, just the aftermath, when the cars were spinning. She stated that she and Mr. Davis offered assistance to Price after the accident. She testified that after Price got out of his vehicle, the driver from the other vehicle walked over and punched Price in the face, knocking him to the ground.
Mr. Davis, the third independent eyewitness, also testified at trial. He testified that he was in the front seat of the vehicle that was behind Price. He stated the light was red, so they were sitting at the intersection. He stated that the "light turned green and started to go and a car came across the intersection on California and hit Price's vehicle on the front side." He testified that he offered to give a statement to police at the scene, but the police officer told him they would call him if they needed a statement. Mr. Davis stated that he intended to check on both vehicles after the accident, but as he was making his way to Maxwell's vehicle, two people came running across the street toward him and Price. He testified that one of the men punched Price, knocking him to the ground. He stated that after the man hit Price, the man turned and punched him as well. Mr. Davis stated that he had only met Price once before the accident. He testified that they had a mutual friend who was also Price's former roommate.
Charles was the next to testify. Charles was riding in the front passenger seat of Maxwell's car. He stated that he had his head down texting and when he looked up, their vehicle was hit. Charles testified that he did not know whether or not Maxwell had to stop at the signal light. He stated *571 that his injuries included glass in his hands, broken ribs, and injuries to his head, neck, and back.
Adams testified that he was seated in the right rear passenger seat of Maxwell's vehicle. He testified that when he noticed the other vehicle, their light had just turned green. He stated that Maxwell's vehicle had made it most of the way through the intersection before being struck by Price's vehicle. He testified that Price's vehicle was moving forward when he tapped on Charles's shoulder and told him that they were about to get hit. Adams testified that he sustained injuries to his hands, neck, and back. Maxwell was not called to testify at the trial.
The trial court stated that the issue before the court was who ran the red light, and the plaintiffs presented only one witness to say Maxwell's light was green. The trial court noted that Price presented three witnesses stating his light was green. The trial court stated that based on the evidence presented, the plaintiffs did not carry their burden of proof by a preponderance of the evidence, and the weight of the evidence actually supports Price's version of the facts. Therefore, the trial court found that Maxwell ran the red light.
The trial court signed its judgment on September 28, 2018, stating Price is not liable to the plaintiffs and that all claims asserted by the plaintiffs against Price are dismissed in full, with prejudice. Charles and Adams now appeal the trial court's judgment.
DISCUSSION
Robert Price ran the red light
First, the plaintiffs argue that the overwhelming evidence supports the conclusion that Price ran the red light. They argue the trial court manifestly erred in not rendering judgment in their favor. The plaintiffs argue that when a witness's story is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may find manifest error even in a finding purportedly based upon a credibility determination.
The plaintiffs assert that the independent eyewitnesses offered an incorrect version of events in order to help out their friend, Price. They argue the trial court committed manifest error by crediting the internally contradictory testimony of Price and the independent eyewitnesses over the clear testimony of Adams, which was corroborated by Maxwell's statement to the police at the scene that his light was green.
Price agrees with the plaintiffs that the correct standard of review is manifest error. He argues that a reasonable factual basis exists to support the trial court's finding in his favor. He asserts that the trial court issued its ruling based upon its determination of the credibility, sufficiency, weight, and interpretation of the witnesses presented at trial.
The appellate court may not set aside a trial court's factual findings in the absence of manifest error or unless such findings are clearly wrong. Stobart v. State, through DOTD , 617 So.2d 880 (La. 1993) ; Mosley v. Griffin , 50,478 (La. App. 2 Cir. 2/24/16), 191 So.3d 16. To reverse the factual findings of the trial court, the appellate court must review the record in its entirety and find that there is no reasonable factual basis for the findings and that the record establishes that the trier of fact was clearly wrong or manifestly erroneous. Salvant v. State , 2005-2126 (La. 7/6/06), 935 So.2d 646 ; Mosley v. Griffin, supra . When findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trial court's *572 findings. Jack v. Eldorado Casino Shreveport Joint Venture, L.L.C. , 52,454 (La. App. 2 Cir. 1/16/19), 264 So.3d 599. The reviewing court should not disturb reasonable factual findings when there is conflict in the testimony. Mosley v. Griffin, supra.
This case presented conflicting testimony between the parties and the trial court assessed the credibility of the witnesses in determining who ran the red light. In assessing credibility, the trial court stated that Adams's testimony seemed credible, but questioned the account that Adams had time to warn his brother of the accident. The trial court noted that Adams had a stake in the outcome, his testimony was self-serving, and he is a convicted felon. The trial court found Price's testimony to be credible, even though it differed from the account given by the three independent eyewitnesses. The trial court noted that it would have been easy for Price to simply alter his version of events to match that of the witnesses, but he did not do so. The trial court stated that the three independent eyewitnesses were all consistent and credible, they did not have a stake in the outcome, and they had no connection to the defendant that would cause them to shade their testimony in his favor.
In reviewing the entire record, we find that the trial court had a reasonable factual basis for its conclusion and was not clearly wrong. The trial court is in the best position to weigh the credibility of the witnesses and we will not disturb that credibility call. This assignment of error lacks merit.
Doctrine of Preemption
In the alternative, the plaintiffs argue that the trial court erred in failing to apply the doctrine of preemption and failing to find comparative fault. They argue that if the testimony of the independent eyewitnesses is accepted, then Price, having stopped at the red light, entered the intersection without waiting to confirm that oncoming traffic had cleared the intersection. They argue the trial court committed manifest error by failing to find comparative fault.
Price argues that the law of preemption does not apply because it is only applicable when the other vehicle is lawfully within in the intersection. He asserts that the Maxwell vehicle ran the red light so it was not lawfully within the intersection at the time of accident. Further, he argues that Charles and Adams were not the "motorists" that the doctrine of preemption contemplates. Rather, the "motorist" was Maxwell, who is not a party to this litigation.
A motorist with a green signal when approaching an intersection cannot depend exclusively on a favorable light. The motorist has a duty to watch for vehicles already in the intersection when the light changed. This duty does not extend to watching for traffic that has not yet entered the intersection. Amos v. Taylor , 51,595 (La. App. 2 Cir. 9/27/17), 244 So.3d 749. In order to preempt an intersection, the motorist must show that he made a lawful entry, at a proper speed, after ascertaining that oncoming traffic was sufficiently removed to permit a safe passage and under the bona fide belief and expectation that he can negotiate a crossing with safety. He must show that he entered the intersection at a proper speed and sufficiently in advance of the vehicle on the intersecting street to permit him to cross without requiring an emergency stop by the other vehicle. Id. ; Mosley v. Griffin, supra.
The trial court reviewed Mosley v. Griffin, supra , in making a ruling on the issue of preemption. The trial court found that there was no evidence presented showing *573 that Price could have avoided the accident. The trial court noted that Price had the green light, proceeded into the intersection, and the accident was unavoidable.
Price testified that he did not see Maxwell's vehicle until the collision occurred. One independent eyewitness described Maxwell's vehicle as "flying" across the intersection. As a result of the impact of the collision, Price's vehicle spun around and Maxwell's vehicle hit a building. As noted above, the trial court found the independent eyewitness testimony to be credible. Based on the evidence and witness testimony, the trial court determined that Price was sitting at a red light when his light turned green. The evidence supports the finding that when the accident occurred, Price had the green light and made a lawful entry into the intersection at a proper speed. According the Price's testimony about not seeing Maxwell's car and the witness stating that Maxwell's car was "flying," it was reasonable for the trial court to conclude that Price entered the intersection under the bona fide belief that he could cross the intersection safely. We find no merit in this assignment of error.
Quantum
The plaintiffs argue this Court should consider the issue of quantum, although the trial court never reached the issue. They argue that they both should be compensated because their injuries effected their jobs as church musicians. Because we do not find merit in the previous two arguments, we do not reach the third issue of quantum.
CONCLUSION
For the foregoing reasons, we affirm the trial court's judgment in favor of Robert Price. Costs associated with this appeal are assessed to Darrell Charles and Alton Adams.
AFFIRMED.