Judgment rendered August 21, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,760-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

AR BROOKS PAINT                                    Plaintiff-Appellee
CONTRACTING, LLC

versus

STEELE EUNSON                                      Defendant-Appellant

* * * * *

Appealed from the
Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2022-CV-00530

Honorable Aisha S. Clark, Judge

* * * * *

MIXON, CARROLL & FRAZIER, LLC          Counsel for Appellant
By: James E. Mixon

PELICAN LAW, LLC                        Counsel for Appellee
By: Jacob D. Rennick

* * * * *

Before STONE, THOMPSON, and ROBINSON, JJ.

**THOMPSON, J.**

A painting company sued a homeowner for the remaining balance owed for the painting of his rental home when the homeowner refused payment, claiming the painters failed to properly paint the interior of the home. The trial court ruled in favor of the painting company, citing its own research done on the Sherwin-Williams website, without disclosing this independent research or providing counsel with the opportunity to address any of the trial court's undisclosed conclusions during the trial. For the reasons set forth more fully herein, we reverse the trial court insofar as it found in favor of the painting company and awarded damages.

## FACTS AND PROCEDURAL HISTORY

Steele Eunson ("Eunson") hired AR Brooks Paint Contracting, LLC ("Brooks Paint"), which is owned by Alton Brooks ("Brooks"), to repaint the interior of his four-bedroom, one-bath rental house located at 2408 Paragoud Blvd., Monroe, Louisiana (the "rental home"). Brooks and Eunson agreed that Brooks Painting would paint the entire interior of the rental home, including all bedrooms, baths, and one closet for a total price of $8,000. Eunson paid Brooks $2,666.64, one-third of the agreed-upon price, prior to beginning work. A dispute over the color of the paint and quality of the work arose, which resulted in the litigation that brings this matter before the court.

At trial, Eunson testified that he wanted the entire interior of the rental home painted an off-white color that matched the hallway of the home. After the initial coat of paint was applied, the tenant contacted Eunson to tell him that the walls and baseboards were painted a mint green color. Eunson

contacted Brooks to tell him that he did not like the color. Brooks agreed to repaint the rental home an off-white color at no additional expense to Eunson. Eunson asserted that after the first coat of off-white paint, the mint green paint could still be seen on the walls. Brooks stated that he applied two coats of off-white paint over the mint green walls and baseboards.

Eunson argued that the paint began peeling on the walls and baseboards a few months after the painting was completed, that other areas of the paint began to peel as well, and that the work was unacceptable to him. Despite demand, Eunson refused to pay the balance due on the paint job, and Brooks filed suit in Monroe City Court for the remaining $5,333.33, two-thirds of the payment due. Eunson filed a reconventional demand seeking a month of lost rent, his cost to travel from his home in Texas to assess the work being done on the rental home in Monroe, and the cost of repainting the rental home.

At trial, Brooks testified that he took saloon doors off the living room and matched the mint green wall color to the doors. The mint green paint was water-based paint. He testified that when he went to cover the green paint, he did not use a primer or a Kilz coat to conceal the green paint because it was not necessary. Brooks testified that he used two coats of the new paint to cover the mint green paint. Upon questioning, Brooks admitted that the paint in the photographs in evidence was peeling from the baseboards, walls, and facings of the doors. Brooks stated that the mint green can be seen through the top paint on parts of the wall. Brooks testified that the paint should not be peeling six months after a paint job was

completed and that if it was peeling, it would be an unacceptable quality of work.

Willie Black ("Black"), who works for Brooks Paint, testified that the painting crew was not given direction by the homeowner as to the color that should go on the walls. He was present when the tenant came to see the new paint and said that she did not like the mint green color. Black testified that he put two coats of the new off-white paint on the walls, and on some walls, he did three coats. He did the final walk-through after the painting was complete and testified that the mint green was not bleeding through. He testified that they did not put a primer or Kilz over the mint green paint because it was unnecessary. He admitted that the photographs showed peeling paint and acknowledged that he would not expect the paint to be peeling so soon after it was completed.

Rebecca Mooney, the tenant at the rental home, testified that Brooks told her that he decided on the mint green color to match the floral wallpaper in the kitchen, but that she did not recall anything else in the house being mint green before Brooks painted it. She testified that the paint is peeling on the walls, baseboards, and doors. She testified that she never told Brooks that she did not like the color, but she did call Eunson after seeing the color and asked him if he wanted it to be mint green. She stated that she lives at the house with her husband and two children. Finally, she testified that due to the paint issue, when she was prepared to move into the rental property, her movers had to deposit her furniture at the front of the house while the painters finished the back of the house, and that she was then tasked with

moving the furniture into the home after the painters had completed their work.

Eunson testified that he told Brooks to paint the house an off-white color. He testified that Brooks said he painted the mint green color to match the countertops in the bathroom. Eunson testified that after Brooks painted over the mint green with the off-white color, the green was bleeding through. Eunson asserted that he lost a month's worth of rent and had to make several expensive trips from his home in Texas to resolve the painting issue. Eunson further testified that the paint needs to be redone, which will be more expensive because now the house has furniture and carpet in it.

> In its ruling, the trial court stated the following:
>
> As you-all were discussing paint and counsel kept asking about [Kilz] and what the Court went to was the Sherwin-Williams website and we looked up—because Mr.—forgive me the owner of the painting company stated on the stand, what type of paint they use and he called it, it's call pre-catalyzed water-based epoxy semi-gloss paint. **Based on the Sherwin-Williams website**, you-all feel free to go to it, you can download it yourself. It tells you what surface preparation is specifically needed when you are painting things and it gives you a whole list of how you do it. Water-based, let me say it correctly again, pre catalyzed water-based epoxy paint does not require primer, and that is listed on the Sherwin-Williams website. **They did not fail to prime the walls or paint correctly**.

(emphasis added). The court further stated that the testimony indicated that carpet was installed after the painting was complete, and the court stated:

> The court is not slow uh—in that we understand that normally when you do lay carpet, baseboards must be lifted all after the paint job was complete and done. Looking through the pictures, I see on one or two surfaces that it was grainy peeling through. But what it looks like to the Court is, is that some of the baseboards were not painted period and that we're going to assume or presume that they were already white or off-white. So, they were not repainted. And again, in specific detail where the carpet is laid, you can see that there is a differentiation

4

meaning someone…moved [it] from the wall. That didn't have anything to do with the paint job.

The court found that the damage to the walls, baseboards, and doors was caused by normal wear and tear, the installation of the carpet, and the renters moving their furniture. The court denied Eunson's request for travel expenses, lost rent, and the cost to repaint, noting that Eunson had not presented any estimates to the court for the cost to repaint. The court found that Brooks completed the painting job, including corrections in the paint color, and deserved to be paid. The trial court ordered Eunson to pay the remaining balance owed to Brooks for the paint job, totaling $5,333.36, plus judicial interest.

Eunson's counsel objected to the trial court's independent research, and the court responded that its decision was based solely on the testimony of the renters, Eunson, and Brooks. Eunson, unconvinced by the trial court's assertion, now appeals this ruling.

## DISCUSSION

Eunson asserts three assignments of error:

**First Assignment of Error: The trial judge erred in speculating as to the cause of the peeling of the paint without any testimony from any witness reflective of the reason given by the trial judge.**

**Second Assignment of Error: The trial court erred in not relying on the evidence presented by the plaintiff and defendant in making its decision.**

**Third Assignment of Error: The trial court erred in conducting its own independent research of facts and supplementing the plaintiff's case by conducting an internet search which was utilized for the basis of her ruling.**

As all three assignments of error involve similar issues, we will address them together.

An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless such finding is clearly wrong. *Stobart v. State, through DOTD*, 617 So. 2d 880 (La. 1993); *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989); *Lewis v. Smith*, 40,590 (La. App. 2 Cir. 1/25/06), 920 So. 2d 920. "Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Stobart*, *supra*. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one in light of the evidence in the record. *Id.*

A contract is formed by the consent of the parties established through offer and acceptance. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent. Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made. La. C.C. art. 1927.

In order to prevail on a breach of contract claim, a plaintiff must prove by a preponderance of the evidence: 1) defendant owed him an obligation; 2) defendant failed to perform the obligation; and 3) defendant's failure to perform resulted in damage to the plaintiff. *Hayes Fund for the First United Methodist Church of Welsh, LLC v. Kerr-McGree Rocky, Mt., LLC*, 14-2592 (La. 12/8/15), 193 So. 3d 1110. A contract for work or services carries an implied obligation on the contractor to perform in a workmanlike manner, in default of which he must respond in damages for the losses that may ensue. La. C.C. arts. 1994, 2769; *Platt v. Interstate Dodge*, 37,059 (La. App. 2 Cir.

4/09/03), 843 So. 2d 1178. A party claiming that repairs are defective or unsatisfactory bears the burden of proving by a preponderance of the evidence that the work was defective. *K&F Refrigeration v. Bowman*, 41,098 (La. App. 2 Cir. 5/17/06), 930 So. 2d 1141. Proof of failure to perform a contract in a workmanlike manner requires some showing of a want of skill, efficiency, knowledge, or lack of ordinary care in the performance of the work or in the selection of suitable equipment or materials. *Platt*, *supra*.

Eunson argues that the trial court erred in doing research outside of the testimony and evidence in the record to reach the conclusion that the painting was done in a workmanlike manner. Eunson also argues that the court's determination that the problems with the paint could be attributed to the installation of carpet, normal wear and tear, and the moving of furniture by the tenants of the rental home are not supported by the record. We agree.

We note that generally, a finder of fact may not consider evidence outside the record in making its findings. *Caruso v. Chalmette Refining, LLC*, 16-1117 (La. App. 4 Cir. 6/28/17), 222 So. 3d 859; *Weatherly v. Optimum Asset Mgmt., Inc.*, 04-2734 (La. App. 1 Cir. 12/22/05), 928 So. 2d 118; *Nail v. Clavier*, 99-588 (La. App. 3 Cir. 11/10/99), 745 So. 2d 1221, *writ denied*, 99-3494 (La. 1/5/00), 752 So. 2d 169. In *Mosley v. Griffin*, 50,478 (La. App. 2 Cir. 2/24/16), 191 So. 3d 16, this Court found that there was no reversable error in a trial court consulting a parish engineer about traffic lights not on the record where the information provided by the engineer was in the record via a report provided by the parties and admitted into evidence, the trial court notified the parties that it would speak to the

7

engineer, and defense counsel did not object to the trial court's plan to speak to the engineer. That case can be differentiated from the case at bar. Here, the trial court relied on information not available to both counsel, and defense counsel was unaware of information relied on by the trial court in making its ruling. Thus, defense counsel was denied the opportunity to delve into the court's understanding and concerns, to question or defend against the information, or to address the issue with witnesses present or procure rebuttal witnesses to the undisclosed notions and conclusions reached by the trial court. This is reversible error. *Mosley v. Griffin*, *supra*. We find that it was manifest error for the trial court to render its decision that the painting had been done in a workmanlike manner, contrary to and not based on the testimony and evidence presented at trial but, rather, on research done on a website with information not found in the record. For the trial court to not disclose these independent outside-the-record notions deprived counsel the opportunity to expand upon and probe the issues deemed determinative by the trial court.

Further, while there was one brief mention in Eunson's testimony that carpet had been laid in the home, there is no information in the record that the baseboards were removed during this process or how it may have affected the paint job. Similarly, while the homeowners did state that they moved their furniture, no questions were asked about whether they damaged the paint during that move. The trial court has based its ruling on its own research and suppositions and implications it made completely outside the record, and those conclusions are not supported by the evidence. Both Brooks and Black confirmed in their testimony that the peeling paint shown

8

to them in the photographs in evidence was unacceptable. Eunson testified he would have to repaint the house because of the poor workmanship. We find that the trial court's conclusions are not supported by the record and were in error. Eunson's assignments of error have merit.

Considering the above, we reverse the trial court's judgment insofar as it ruled in favor of Brooks Paint and awarded it $5,333.36 plus legal interest. We affirm the trial court's denial of Eunson's reconventional demand for travel expenses, lost rent, and the cost to repaint the rental home.

## CONCLUSION

For the reasons set forth above, the trial court's judgment is reversed insofar as it ruled in favor of AR Brooks Paint Contracting, LLC and awarded the company $5,333.36. Costs of this appeal are assessed to AR Brooks Paint Contracting, LLC.

**REVERSED IN PART; AFFIRMED IN PART.**